[No. 5343.   Decided May 2, 1905.]

KATHARENE M. SNYDER *et al., Appellants,* v. O. G. HARDING, *Respondent.*[1]

LANDLORD AND TENANT—TENANT CLAIMING POSSESSION UNDER CONTRACT TO PURCHASE—JUDGMENT—CONCLUSIVENESS—RIGHT TO CROPS PRIOR TO CLAIM AS PURCHASER.  Where a tenant commenced an action against his landlords for a conveyance under a contract to purchase the demised premises, a final decision in that suit to the effect that he could not thereafter claim as tenant is not conclusive in subsequent litigation as to the validity of the lease, and does not estop him from claiming crops grown by him as a tenant prior to the commencement of the former action.

SAME—HOLDING OVER UNDER VOID LEASE—RIGHT TO CROPS GROWN.  Where a tenant enters under a void lease for a term of three years, and accounts to the owners for their share of the first year's crop under the terms of the lease, and thereafter holds over for more than sixty days without notice to quit, he becomes a tenant holding over for another year, under Bal. Code § 5528, and is entitled to his share of a crop sown by him and substantially matured before action brought to eject him, and actually harvested while he was still in possession.

SAME—DIVISION OF CROP UNDER TERMS OF VOID LEASE.  A tenant on shares, holding over under an invalid lease after the payment of the first year's rent, is entitled to a division of the crop under the terms of the lease.

Appeal from an order of the superior court for Adams county, Neal, J., entered July 30, 1904, directing the distribution of money paid into court to abide the result of the suit, after a decision of the supreme court on appeal from the final judgment.  Affirmed.

*Merritt & Merritt,* for appellants.

*O. R. Holcomb,* for respondent.

CROW, J.—On the 29th day of September, 1899, appellants, Katharene M. Snyder and George S. Snyder, her

[1]Reported in 80 Pac. 789.

husband, and Charles D. Snyder, were the owners of a
large tract of agricultural land, in Adams county, the in-
terest of the said Katharene and George S. Snyder being
community property.   On said date the said George S.
Snyder executed and delivered to the respondent, O. G.
Harding, a written lease for said real estate, for the term
of three years from January 1, 1900, said lease not being
executed by his wife Katharene M. Snyder, nor by the said
Charles D. Snyder.   Respondent took possession under
said lease, and, in the fall of 1899 and spring of 1900,
sowed a crop of grain, which was harvested by him in the
summer and fall of 1900, when he accounted to appellants
under said lease for their share thereof.   In the spring of
1901, respondent still being in possession under said lease,
sowed another crop of grain, which, having matured, was
harvested, as hereinafter stated.   Appellants did not, nor
did any of them, repudiate said lease, or the tenancy of
respondent thereunder, at any time prior to the commence-
ment of this action.

On June 1, 1901, respondent, O. G. Harding, claiming
to be the equitable owner of a portion of said real estate,
under a contract of sale from the appellant George S. Sny-
der, commenced an action against said George S. Snyder
for specific performance of said contract.   Thereafter, on
or about June 26, 1901, appellants commenced this action
against respondent, for the purpose of recovering posses-
sion of all of said land, as owners thereof, claiming re-
spondent was holding the same wrongfully and without any
right thereto.   On said date, said crop of 1901 was grow-
ing, was substantially matured, and ready for harvest.

On July 13, 1901, appellants made a motion, asking
an order restraining respondent from removing said crop
from said real estate.   A temporary restraining order was
granted, and while the same was in effect appellants and

respondent entered into a written stipulation, whereby it was agreed that respondent should harvest said crop, removing the same from the land, use a sufficient portion thereof to pay the expenses of harvesting, and should deliver the rest thereof to a warehouse, taking receipts in the joint names of respondent and one William Snyder, representative of appellants. By said stipulation it was expressly provided, that it should not, nor should any part thereof, be used for or against either appellants or respondent in this action; that neither of them waived any right thereby; and that said action should be disposed of the same as if said stipulation had not been made.

In pursuance of said stipulation, the crop was harvested and stored in a warehouse, and warehouse receipts were taken. Afterwards, on May 5, 1902, by further stipulation, it was agreed that said warehouse receipts might be sold, and the proceeds deposited with the clerk of the superior court, to abide the further order of said court. Such sale and deposit were immediately made. During the pendency of this action, respondent Harding remained in possession of the land, until January 11, 1902, on which date he was dispossessed by the sheriff of Adams county, under a writ of restitution issued at the instance of appellants. It will thus be seen that respondent was in possession until after the crop was harvested and stored in the warehouse.

Trial was had on March 26, 1903, and thereafter judgment was entered in favor of appellants for the possession of the real estate, but it does not appear that any order directing any distribution of the proceeds of the crop was then made. An appeal was taken, and said judgment was affirmed. The opinion of this court on said appeal appears in 34 Wash. 286, 75 Pac. 812, and a reference thereto will furnish a more complete statement of the facts herein.

After the affirmance of said judgment by this court, respondent, O. G. Harding, on June 18, 1904, filed, in the superior court of Adams county, a motion asking that distribution of the proceeds of said crop, then in the possession of the clerk, amounting to $8,786.80, be made by paying one-fourth thereof to appellants and three-fourths to respondent, under the terms of said original lease. Other disbursements relative to costs, taxes, etc., were asked, but are not material at this time. At the hearing of said motion, appellants requested an order for the payment of the entire proceeds of said crop to them. The court, in substance, directed the payment of one-fourth to appellants, and three-fourths to respondent. From said order of distribution, this appeal has been taken.

It is contended by appellants, that the original judgment of the superior court, and the affirmance thereof by this court, is the law of this case; that by such judgment it was determined that respondent had no rights under said lease; that, at the time of the commencement of this action, said crop was immature and growing upon appellants' land; that the same was a part of the realty; and that appellants, as the successful parties in this action of ejectment, are entitled to all of such crops.

We have carefully considered the arguments of appellants, and have examined all of the authorities cited by them, but are unable to agree with their contention. If we fully understand the original judgment entered by the superior court, and the affirmance thereof by this court, such judgment did not amount to an adjudication that respondent was never at any time a tenant of appellants; but only determined that, as respondent had, prior to the commencement of this action, instituted a suit against appellant George S. Snyder, in which he claimed to be an equitable owner of a portion of the land, he could not con-

tinue to hold possession as tenant of appellants. This court did not decide that respondent had not been a tenant of appellants, prior to the commencement of this action. On the former appeal to this court, the present respondent, being appellant therein, Hadley, J., after stating the findings of fact, made at the request of the respective parties by the trial court, and also stating the conclusions of law, said:

"Appellant [respondent here] contends that the first conclusion of law is erroneous in that it does not follow from the facts which were found by the court at appellant's request. It is doubtless true that the lease contract was not good under certain findings of the court, in that it was found that the wife member of the said community, and also the other joint owner of a portion of the land, did not participate in the execution of the contract. Under other findings made, and particularly those made at appellant's request, it becomes a question whether such conduct of respondents appears as will estop them to deny the lease. If the findings were confined to that subject, we might conclude that respondents were estopped, and that the court was in error as to the first conclusion of law, and in a judgment based wholly thereon. It was further found, however, that appellant began a suit against one of these respondents, by which he claimed to be the equitable owner, under a contract of purchase of a portion of this land, and sought specific performance of such contract. Appellant's position in that action was certainly notice to respondents that he did not claim to hold as tenant, but that he did claim to hold by the rights of a purchaser and equitable owner. Therefore, even if the conduct of respondents had theretofore been such as would estop them to deny the lease, yet appellant's position in his suit amounted to a declaration of rescission, on his part, of the lease contract, for he no longer claimed as tenant, but as owner. He cannot claim as a tenant while he occupies the position of one holding adversely. *White v. Brash* (Ariz.), 73 Pac. 445."

This language certainly did not amount to an adjudication,

by this court, to the effect that the present respondent, Harding, had never been a tenant of appellants.

Appellants cite numerous authorities in support of their present position, which we think do not sustain their contention. In *McGinnis v. Fernandes,* 135 Ill. 69, 26 N. E. 109, 25 Am. St. 347, cited by them, where growing crops were adjudged to the successful plaintiff in an ejectment suit, the court held the defendants in such suit to have been wrongdoers and trespassers, in holding and cultivating the land, and that, being such trespassers, they had no right to plant or cultivate the crop. It certainly cannot be held that the respondent, Harding, when he originally went into possession of appellants' land, and sowed and raised said crops of 1900 and 1901, was a wrongdoer or trespasser, as he was there rightfully, with at least the implied consent of all the appellants.

In *McLean v. Bovee,* 24 Wis. 295, 1 Am. Rep. 185, and *Rowell v. Klein,* 44 Ind. 290, 15 Am. Rep. 235, also cited by appellants, although crops were adjudged to the successful plaintiffs in ejectment suits, it appeared that such crops were sown by the defendants after the commencement of said suits, while wrongfully in possession. Here the crops were sown, and had substantially matured, prior to the commencement of this action, and while respondent was rightfully in possession; and he was still in possession when they were harvested.

As above stated, the lease was made to respondent by George Snyder, on September 29, 1899, and was to run for three years from January 1, 1900. The lower court found, we think correctly, that said lease was originally void, as against Charles D. Snyder and the community consisting of Katharene M. Snyder and George S. Snyder, for the reason that Katharene M. Snyder and Charles D. Snyder did not join in its execution—that is, it was void as

a lease for a term of years. It does not follow, however, that respondent, Harding, having entered into possession of said land, and having cultivated the same under said lease, with at least the implied consent of all the appellants, did not become their tenant. We think he was a tenant and lawfully in possession up to the time he instituted his action against George S. Snyder for specific performance.

"Where a lessee enters into possession under an invalid lease and pays a periodical rent, a periodical tenancy is created, as a general rule." 18 Am. & Eng. Ency. Law (2d ed.), 194, and cases cited.

Having taken possession under said invalid lease, having grown the crop sown in the fall of 1899 and the spring of 1900, and having made settlements with appellants for 'said crop, under the terms of said lease, respondent was surely their tenant for the year ending January 1, 1901. He remained in possession thereafter, without notice to quit, for more than sixty days after January 1, 1901, and planted another crop, the one in dispute. We think he then and thereby became a tenant holding over for another year, under the provisions of Bal. Code, § 5528, and that, if he had not commenced said action for specific performance, he would have been entitled to remain in possession until January 1, 1902, as such tenant holding over. If we are correct in this conclusion, it follows that the crop in dispute was sown and cultivated by respondent as tenant for appellants during the year 1901, and that respondent was the owner of the tenant's interest in said crop, and was entitled to recover such interest. He was not, at the time of sowing said disputed crop, a wrongdoer, nor was he a trespasser on said land. On the contrary, he was then rightfully in possession; hence appellants are not entitled to recover all of the proceeds of said crop, under the principles announced in said cases of *McGinnis v. Fernandes*,

*McLean v. Bovee,* and *Rowell v. Klein, supra,* and others cited by them in their brief. In *McLean v. Bovee,* the syllabus reads as follows:

"One who recovers land in an action of ejectment is entitled to the crops planted after the commencement of that action."

In *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406, this court, in discussing certain instructions of the trial court, relative to the right of a party claiming to own real estate, to a crop grown thereon, while another claimant was in possession, said:

". . . this raises directly the proposition as to whether a plaintiff can maintain an action for the value of crops grown and matured prior to his possession of the land on which said crops are grown. The law is to the effect that he cannot, even where his title to the land is unquestioned."

In *Johnston v. Fish,* 105 Cal. 420, 38 Pac. 979, 45 Am. St. 53, the syllabus in the Pacific Reporter reads as follows:

"Where plaintiff in ejectment establishes his title, he cannot maintain claim and delivery for a crop raised and harvested on the land by defendant's tenant before judgment in ejectment was rendered, though the tenant knew that plaintiff disputed his landlord's title."

In the body of the opinion of the same case, the supreme court of California uses the following language:

"The law gives to the plaintiff in ejectment the right to recover from the defendant, either in the same action or in another, the value of the use and occupation of the land, which is termed 'damages,' for the withholding thereof; but, while the title to the land is undetermined, the owner out of possession is not entitled to the fruits of the land, nor can he, after he has established his right to the possession, recover the fruits of the land from one who has purchased them from an occupant while such occupant was

43–38 WASH.

in the adverse possession. Such a rule would give to the real owner the gross product, of the land, irrespective of the labor and expense required in its production. As was said in *Page v. Fowler,* 39 Cal. 412, 'The very fact that he may recover the rents and profits of the land shows that he cannot recover the crops, for, as was well said in the case of *Stockwell v. Phelps,* 34 N. Y. 363, [90 Am. Dec. 710,] the owner of the land in such cases does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land.' "

See, also, *Groome v. Almstead,* 101 Cal. 425, 35 Pac. 1021.

The respondent being, then, entitled to the tenant's share of the crop, the only question remaining to be considered is, how were said crops to be divided? The lease provides that, for the year 1901, appellants should be entitled to one-fourth, and the respondent to three-fourths, and the trial court made the division on that basis. Was the lease to be considered in making such division? We think it was.

"In determining the terms of the periodical tenancy created by the entry and payment of rent, reference may be had to the invalid lease, and the lessee becomes bound by all stipulations therein applicable to a periodical tenancy." 18 Am. & Eng. Ency. Law (2d ed.), 195, 196.

See, also, *Nash v. Berkmeir,* 83 Ind. 536; *Steele v. Anheuser-Busch Brew. Asso.,* 57 Minn. 18, 58 N. W. 685; *Kernochan v. Wilkens,* 3 App. Div. 596, 38 N. Y. Supp. 236.

We find no error in the record, and the judgment of the superior court is affirmed.

Mount, C. J., Root, Dunbar, and Rudkin, JJ., concur.

Fullerton and Hadley, JJ., took no part.