## TAYLOR v. R. C. MAXWELL CO.
### (two cases).

## R. C. MAXWELL CO. v. TAYLOR et al.
### (two cases).

Circuit Court of Appeals, First Circuit.
March 16, 1929.

Nos. 2316–2319.

George S. Taft, of Worcester, Mass., for Taylor and others.

Frederick A. Crafts, of Boston, Mass., for R. C. Maxwell Co.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

JOHNSON, Circuit Judge. These cases are appeals from judgments of the District Court of the United States for the District of Massachusetts.

Nos. 2316 and 2317 are actions at law to recover from the defendant the agreed price for the right to erect signs for display ad-

vertising purposes on the roofs of buildings in the city of Worcester, in the commonwealth of Massachusetts.

Nos. 2318 and 2319 are actions at law by the defendant in the other two actions to recover money which had been paid in accordance with written agreements entered into between the parties. The parties will be designated as they were in the District Court. They were heard by the judge without a jury.

In No. 2316, the plaintiff entered into the following agreement with the defendant:

"Worcester, Mass., December 8, 1920.

"In consideration of the payment of the sum of eight hundred dollars ($800.00) per year, by the R. C. Maxwell Company, of Trenton, N. J., hereinafter called the lessee, I, Forrest W. Taylor, hereinafter called the lessor, hereby grant to the lessee the exclusive right to erect a sign or signs for display advertising purposes on the roof of the building at No. 426–428 Main Street and No. 1–7 Pleasant Street, Worcester, Mass., for a period of five (5) years from the first day of January, 1921. Said sum to be payable in equal monthly payments in advance, of sixty-six and 67/100 dollars ($66.67) each, on the 1st day of each and every month during said term.

"The lessee agrees to keep said roof in good condition and be responsible and pay for any damage to persons or property caused by the erection or maintenance of said sign during the term of this agreement.

"The lessee agrees to comply with all statutes, ordinances or regulations that are now in force or may be enacted during the term of this agreement by state or city governments or any commission or board acting thereunder.

"All signs and sign structures placed on the above-described roof shall always remain the personal property of the lessee, and shall be kept in repair by the said lessee.

"The lessor may terminate this agreement by giving the lessee sixty days notice in writing, provided the building is needed for building purposes or in case the sale of the property is desired."

In No. 2317, the plaintiffs, as executors and trustees of the estate of Ransom F. Taylor, claim to recover from the defendant the amount due under an agreement similar to that described in No. 2316, but containing more explicit details by which they granted the right to erect signs for display advertising purposes on the roof of the building at No. 430–438 Main street, Worcester, Mass., for a term of four years and eight months from and commencing the 1st day of August, 1921, at the rate of $1,200 per year for the first eight months, and at the rate of $1,600 per year for the remaining four years. This last agreement contained also this paragraph:

"And should the said party of the second part be prevented by authorities having jurisdiction from constructing or maintaining its signs, electrically or otherwise, this lease shall terminate at the option of the party of the second part, and the party of the first part agrees to return upon demand, pro rata, any rental paid in advance. However, said party of the second part shall give the said party of the first part 30 days' written notice of its intention to terminate this lease."

In No. 2316, the defendant recovered judgment, and plaintiff appealed.

In No. 2317, the plaintiffs had judgment for $4,966.67 and interest, amounting to $858.49, making a total of $5,825.16, and the defendant appealed.

No signs were erected by the defendant upon the buildings described in either agreement, because it could not secure the permit required by the regulations of the division of highways of the department of public works of the commonwealth of Massachusetts.

In No. 2318, the plaintiff sought to recover from the defendant $800, with interest, being the advance payments made by it under the written agreement of December 8, 1920, and recovered judgment, from which the defendant duly appealed.

In No. 2319, the plaintiff sought to recover the sum of $500 with interest, being the amount paid by it under the agreement described in No. 2317, and the court found for the defendants and the plaintiff appealed.

In 1920 the Legislature of Massachusetts passed an act in relation to outdoor advertising. Chapter 545, Acts of 1920; chapter 93 of the General Laws. Under this act the division of highways was authorized to grant permits and make regulations in regard to such advertising and places where it might be done. The act also provided (section 30) that "no person, firm, association or corporation shall post, erect, display or maintain on * * * private property within public view from any highway, public park or reservation any billboard or other advertising device, * * * which advertises or calls attention to any business, article, substance or any other thing, unless such billboard or device conforms to the rules and regulations and ordinances or by-laws established" under

the section conferring authority upon the division of highways to make regulations. Section 33 of the act also provided a penalty for the violation of any "rule, regulation, ordinance or by-law established" by the division of highways.

By regulations promulgated by the division December 30, 1920, to be effective December 31, 1920, it was provided that no outdoor advertising should be permitted within 300 feet of any parkway, playground, state reservation, or public building. Both of the buildings described in the agreements in question are about 200 feet from the Worcester Common, on which the Worcester city hall is located, and directly across a narrow street from each other.

By regulations adopted July 1, 1921, it was provided as follows:

"No permits shall be issued for outdoor advertising on any location within 300 feet of any park, parkway, playground, or reservation, except under the following conditions: * * * permits may be issued for the location of electrical display signs on buildings under such restrictions as the division may require."

Another set of regulations was made January 24, 1924, which was exactly the same in regard to locations of billboards on private property within public view from a park.

The applications of the Maxwell Company for permits to erect signs on the buildings described in the two agreements above set forth were denied December 27, 1921, for the reason that the buildings were within 300 feet of the City Hall Park.

Following this action of the commission the Maxwell Company filed an application January 23, 1922, asking a permit to erect illuminated signs upon the roofs of both buildings, which was denied February 9, 1922. Another application to place an electrical sign on the roof of the building at 430–438 Main street was denied May 9, 1922, by a letter in which the following statement appears:

"The commissioners have considered this location and are of the opinion that no advertising structure should be placed in this vicinity. Therefore they have refused to approve your application."

The matter was reopened and the original disapproval confirmed November 8, 1922.

It is stipulated that the Maxwell Company was at all times diligent in obtaining counsel and in endeavoring to obtain the required permits. It took up the matter of obtaining them with the attorney for the owners of the buildings, and he joined with it in presenting petitions to the division of highways, and represented it and the owners of the buildings at hearings in relation to granting permits. The payment of his fees for services in these hearings was shared equally by the Maxwell Company and the owners of the buildings.

On January 12, 1922, the Maxwell Company wrote to Forrest W. Taylor that it had been unable to obtain permits to occupy the roofs of the buildings in question and asked for his assistance in the matter, stating that the commission might grant the permits if it understood that the owners of the buildings, and not the Maxwell Company, would be the losers in the event the bulletins were not built, and further stating: "If, however, they insist upon refusing to give us permits, we shall of course be compelled to cancel the leases and request a refund of the rental paid in advance." The record discloses that the owners, as hereinbefore stated, joined with the Maxwell Company in an attempt to obtain the necessary permits.

The first question presented is whether under the written agreements between the parties the Maxwell Company became a lessee or a licensee. It will be noted that the owners of the buildings granted no interest in or possession of any part of them, but only the right to erect a "sign or signs for display advertising purposes." Exclusive possession of the roof would remain in the owners, except so far as the same might be required for the exercise of the right granted.

While these agreements are called leases, this does not affect the rights of the parties under them. Whether they were leases or licenses to do certain acts upon the buildings described is a local question and in its determination the decisions of the court of last resort of Massachusetts are binding upon us. In Lowell v. Strahan, 145 Mass. 1, 12 N. E. 401, 1 Am. St. Rep. 422, it was held that one who is granted a right to the use of a wall or roof for advertising purposes is a licensee, and the relation of landlord and tenant does not exist between him and the owner. See, also, Jones v. Donnelly, 221 Mass. 213, 108 N. E. 1063. While there are some decisions to the contrary, the Massachusetts decisions are in accord with those of New York and the great weight of authority elsewhere.

The Maxwell Company, therefore, held a license, irrevocable for the term for which it was granted, to do a single act upon the buildings described in the agreements.

The Legislature of Massachusetts had enacted a law in May, 1920, which placed the whole matter of outdoor advertising under the control of the division of highways, who were authorized to make rules and regulations. This act has been declared by the Supreme Court of Massachusetts to be constitutional. Both parties to the agreement knew that the regulations prescribed by the division of highways must be complied with before any permits could be granted. While when the agreements were made, no regulations had been promulgated prohibiting the placing of signs upon buildings within 300 feet of a public park, and the contract could not be said to be illegal upon this ground; yet because of the regulation which was established, and which had the force of law, the performance of the agreement entered into became illegal and under the well-established law that an agreement or contract although legal at its inception may become illegal by reason of a law enacted after it was made and the parties thereto would be relieved from its performance. This occurred in the case of each of these agreements. While legal at their inception, performance without a permit became illegal with a penalty affixed.

While it is too well established to need the citation of any authorities that such is the law, a large number of cases in which this has been held may be found in the very copious note to American Mercantile Exchange v. A. G. Blunt, 10 L. R. A. (N. S.) 414. See, also, 13 C. J. 646, § 720, and cases cited.

The attorney for the owners of the buildings does not dispute that the above is the well-established law, but claims that the same rule should be applied to these agreements as would be applied to a lease, and relies upon Gaston v. Gordon, 208 Mass. 265, 94 N. E. 307, in which a lease contained the covenant that the lessee would use the leased premises solely for the retail liquor business, but afterwards failed to obtain a license and refused to occupy the premises or pay rent, in which case the court said:

"The lessee has bound himself in unmistakable language to pay the rent without any qualification dependent upon his failure to obtain the necessary authority from public officers. Although this mischance renders it impossible for him to make the valuable use of the property which was contemplated, that was a contingency which ought to have been foreseen, and some anticipatory provision of partial or entire exoneration from liability inserted in the lease if such was the intention of the parties. There appears to be no more reason to imply such condition in this lease than to say that the burning of a building ends a lease of land and buildings. Yet nothing is better settled in the law of landlord and tenant than that, in the absence of special stipulation, there is no abatement of rent in case a building upon leased premises is ruined by fire."

If these agreements did not establish the relation of landlord and tenant, but were only licenses to do a particular act upon certain buildings, this decision is not applicable. If it were, then if the buildings burned the Maxwell Company would still be liable to pay the amount stipulated to be paid for the display of advertising signs upon them.

Our conclusion is that these agreements, although the word "lease" is used in them, and other language applicable to it appears in them, did not create the relation of landlord and tenant but authorized the Maxwell Company, as a licensee, "to erect signs for display advertising purposes not harmful to the party of the first part" upon the roofs of the buildings described in each agreement, and that, the enjoyment of this right having been made unlawful and the consideration having completely failed, the Maxwell Company cannot be compelled to pay the amounts agreed to be paid under them.

The fact that in the agreement made with the representatives of the estate there is a provision which in substance is that the Maxwell Company, if prevented from constructing or maintaining its signs, electrical or otherwise, may terminate the lease at its option, and the parties of the first part, the owners of the building, will return upon demand, pro rata, any rental paid in advance upon receiving thirty days written notice of the intention of the Maxwell Company to terminate the lease, does not affect the rights of the parties. It was terminated by an act of law, and no notice was necessary.

By the great weight of authority in this country, payments made under a contract the performance of which has been made impossible by an act of law may be recovered. This rests upon sound principles of justice. In equity and good conscience the owners of the buildings in question ought not to retain payments which were advanced to them in contemplation of the exercise of a right which was afterwards declared to be unlawful. They have suffered no loss, as under the regulations established by lawful authority the right which they attempted to give to the Maxwell Company could not be given to oth-

ers. The company has never received any consideration for the money which it has paid, and it should be repaid to them.

In Nos. 2316 and 2318, the judgments of the District Court are affirmed, with costs in this court to the appellee.

In Nos. 2317 and 2319, the judgments of the District Court are vacated and the cases are remanded to that court with instructions to enter judgment for the defendant in 2317, the appellant here, and for the plaintiff in 2319, for the sum of $500, with interest from January 1, 1922; the appellant to recover costs in this court in each of these cases.