The receiver asks advice and leave to pay certain claims preferentially. The defunct defendant company conducted an outdoor poster advertising business which the receiver continued. The United Advertising Company, similarly engaged, bought the business from the receiver for $106,000, under an offer made by a "dummy," which was approved by the court, February 9th, 1932, after due notice to all concerned. The offer was for all billboards, poster panels and advertising signs at identified locations, representing the outdoor advertising business of the defendant company, and also two roof signs, one at Broad and Market, Newark, the other at Albany and George streets, New Brunswick, together with its plant and its good will, trade marks, trade names, copyrights and patents appertaining to the business. The offer was upon condition, inter alia, that the title should be clear of all encumbrance; that the receiver should terminate all existing leases for locations of billboards, poster panels or advertising signs; that he should pay the"rent" due to February 10th, 1932, for such locations and that he should at the closing deliver at least eight hundred and fifty erected billboards, poster panels and advertising signs as part of the going business. Some three hundred and fifty "landlords" have filed claims with the receiver for rent, aggregating, approximately, $15,000 and claim liens under the Landlord and Tenant act. Comp. Stat. p. 3066. Except in an instance or two where land was leased and in two cases where roof space was let for signs, the common form of the agreement between the land owner and the defendant company reads that "the landlord leases to the tenant the entire advertising privilege of the plot known as and situated at (location) for the term of ____ years at the yearly rental of $ ____ payable ____." Then follows a provision for *Page 220 
automatic yearly renewals terminable on thirty days' notice and a covenant for exclusive use of the premises for advertising purposes.
The instrument has not the qualities of a lease. The terms "landlord," "leases," "tenant" and "rent" do not connote a letting; there was no demise; the "landlord" retained possession and dominion of the premises. The agreement simply was an irrevocable license, for a term, to put advertisements upon or in the location. In a lease, the premises are surrendered to the tenant and his possession is exclusive whereas a licensee's privilege is enjoyed under the owner's possession. Walsh L.Prop. (2d ed.) 243; Taylor v. R.C. Maxwell Co.,31 Fed. Rep. 2d 711; Eckert v. Peters, 55 N.J. Eq. 379; Hedden
v. Bierman-Everett Foundry Co., 90 N.J. Eq. 227. A license may be irrevocable. Polakoff v. Halphen, 83 N.J. Eq. 126. The licensors have no lien under the Landlord and Tenant act.
The receiver, however, covenanted with the purchaser to pay the rents and the covenant was sanctioned by the court. The term "rent" was used in the sense it was used in the "leases," and the covenant, though inuring to the claimants, was intended to benefit the purchaser. In the purchase of the going concern and its good will, the good will of the eight hundred and fifty location owners was of great value and with these the purchaser had to make terms, the receiver having canceled existing agreement obviously to enable the purchaser to make its own bargains. Dissatisfaction was likely to follow a failure to pay the rent owing by the defunct company, and there was danger of defection to the other concerns, for competition was keen, and they were guarded against. Payment of the rent was part consideration for the purchase price. The purchaser could enforce payment; the court will order it. *Page 221