[No. 25252.   Department Two.   December 10, 1934.]

CHARLES U. G. ROWLAND *et al., Respondents,* v.
ALBERT L. COOK *et al., Appellants.*[1]

[1]Reported in 38 P. (2d) 224.

*Hayden, Metzger & Blair,* for appellants.
*Charles T. Peterson,* for respondents.

BLAKE, J.—The plaintiffs are the owners of the premises described as 1121 south Broadway, in Tacoma. December 15, 1930, plaintiffs and defendants entered into an agreement for lease of the storeroom for a term of six years, at the agreed rental of $350 per month for the first two years, $400 per month for the next two years, and $450 per month for the last two years. The agreement was not acknowledged. It contemplated that a formal lease should be executed, and provided:

"This agreement shall . . . remain in effect until actual lease is prepared and signed, which preparation will be done immediately, lease to be dated on or before March 1, 1931, and rent to commence on date of occupancy."

A formal lease was never executed. The defendants, however, went into possession of the premises on February 1, 1931, and continued in possession until April 1, 1934, when they vacated. Plaintiffs brought this action for specific performance of the contract of December 15, 1930. The trial court entered a decree for specific performance. Defendants appeal.

It is too well settled for discussion that an unacknowledged lease for more than one year, is unenforcible, and if the lessee enters into possession, the tenancy is one from month to month and is terminable

on statutory notice. *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852; *Union Oil Co. v. Walker,* 150 Wash. 151, 272 Pac. 64; Rem. Rev. Stat., §§ 10618, 10619 [P. C. §§ 3553, 3554].

However, the ban of the statute may be escaped by part performance. The doctrine of part performance has frequently been invoked (and sustained by this court) by lessees against lessors. *McGlauflin v. Holman,* 1 Wash. 239, 24 Pac. 439; *Schulte v. Schering,* 2 Wash. 127, 26 Pac. 78; *O'Connor v. Oliver,* 45 Wash. 549, 88 Pac. 1025; *Northcraft v. Blumauer,* 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071; *Zinn v. Knopes,* 111 Wash. 606, 191 Pac. 822; *Lautenschlager v. Smith,* 155 Wash. 328, 284 Pac. 87; *Himpel v. Lindgren,* 159 Wash. 20, 291 Pac. 1085; *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288. In the latter case it is said:

"It is fairly borne out by our own decisions that the taking of possession by the lessee and the payment of a part of the consideration or performance of work as a part of the consideration, if such payment or work is a part of the consideration inducing the lease and going to the entire term in addition to the rental to be paid at stated periods throughout the term, constitutes such part performance as to sustain the lease for the entire term."

While the doctrine of part performance has not been so frequently invoked on behalf of lessors to enforce unacknowledged or oral leases for more than one year, it is equally applicable on the ground of mutuality. In three instances, at least, this court has enforced unacknowledged leases at the behest of lessors. *Forrester v. Reliable Transfer Co.,* 59 Wash. 86, 109 Pac. 312, Ann. Cas. 1912A, 1093; *Metropolitan Building Co. v. Curtis Studio,* 138 Wash. 381, 244 Pac. 680; *Jones v. McQuesten,* 172 Wash. 480, 20 P. (2d) 838.

In the case first cited, an unacknowledged lease was held effective on the ground of part performance, where the lessor had made improvements on the demised property at the instance of the lessee. The improvements were made at a substantial outlay of money, but they did not add value to the freehold. They were designed solely for the benefit of the tenant, and added value to the property only for the term demised. They were a part of the consideration inducing the lease and going to the entire term. The court decreed specific performance. It is on this principle that the trial court decreed specific performance in the instant case.

The contract of December 15, 1930, provided:

"We (lessors) agree to build into the room hereby leased, a balcony located as designated by yourself, and we are to install necessary electrical wiring to make the room suitable to occupancy by yourself, and will deliver the room to your possession immediately upon the completion of the balcony and wiring, and the removal of any partitions, shelves and other equipment in the room.

"You are to designate the locations of the heating radiators, and insofar as practical, we will establish them at that location."

The balcony was built at a cost of some $1,500. That the building of it was a part of the consideration inducing the lease and going to the entire term, is not debatable under the evidence. But, say appellants, the balcony added to the value of the freehold. We do not think the evidence supports the assertion, except in the sense that the improvement was necessary to procure appellants as tenants. Balconies, however, in storerooms of this character, must be constructed to suit the taste and needs of the particular occupant. The kind of balcony that is suitable to one tenant might be entirely useless to another.

628

Taking the evidence on this subject as a whole, we are satisfied that the balcony built by respondents at the instance of appellants adds nothing (now that the room is vacant) either to its value or its rentability. Another tenant might very well want the balcony removed.

Appellants further contend that specific performance is not available to respondents because the injury sustained is compensable in damages. This is upon the theory that the measure of damage is the cost of the balcony. This, however, will not compensate respondents for their entire loss. And there is no way of ascertaining what that loss might be, for it is not to be assumed that the appellants were the only tenants to whom the property could have been rented. Had not the appellants entered into the contract and taken possession of the premises, respondents would have been free to seek other tenants at a time when prospective tenants were not so scarce as they were at the time appellants vacated. But for appellants' conduct, respondents might have procured an even more desirable tenancy for their property. It is the very uncertainty of what would have happened that makes specific performance the only remedy that can be invoked justly in such cases. Furthermore, the lessor's right to specific performance in such cases is established by *Forrester v. Reliable Transfer Co., supra.*

Appellants say that respondents, because of laches, are precluded from invoking the remedy. At about the time the term commenced, respondents presented a lease to appellants, which the latter refused to execute. So, say appellants, the delay of respondents, since such refusal, in seeking specific performance in the courts bars them now. The difficulty with this position is that appellants, seeking reductions in

rent, recognized the agreement of December 15, 1930, as a binding obligation. April 14, 1932, asking a reduction of fifty dollars a month in rent, they wrote:

"Said reduction to be temporary, and all other terms and conditions of the agreement entered into on December 15, 1930, to be and remain in full force and effect. . . ."

Again on December 10, 1932, asking a further reduction of fifty dollars per month, appellants wrote:

"I understand that the reduction, if granted, shall be temporary and all other terms and conditions of the agreement entered into on December 15th, are to remain in full force and effect."

Seeking still a further reduction in rent, appellants wrote on February 16, 1933, as follows:

"We are renting from you under an agreement and we have ascertained that this agreement is not legally binding on you after the first year and that you have the right of ordering us out at any time."

Respondents, however, replied:

"Until further notice you may pay rent in accordance with your letter, at the rate of $200 per month. It is to be clearly understood, however, that the owners retain the right at any time to reinstate in full force and effect the original agreement dated December 15, 1930, and to require that rent be paid in accordance with this agreement upon reasonable notice to yourselves."

And appellants continued to occupy the premises, paying the reduced rental so agreed upon, until December 8, 1933, when for the first time they unequivocally repudiated the agreement of December 15, 1930, saying:

"We are not renting under a lease, there was an agreement that is not binding either on you or us after the first year. We are willing to rent month by

month at $200 per month and when not satisfactory to you or to us we will vacate on thirty days written notice."

Up to this time, it seems to us, there was no occasion for respondents to resort to the courts to sustain their rights. Their claimed rights had not been disputed—not even in the letter of February 16, 1933. We do not think it can be said, therefore, that they were guilty of laches in not seeking legal redress before March 27, 1934, the date this action was commenced.

■ It is also suggested that respondents are estopped from pursuing this action, because they made no response to appellants' letter of December 8, 1933. The reason given in support of this contention is that appellants, assuming that respondents acquiesced in the declaration that the tenancy was from month to month, committed themselves on the lease of another storeroom. We do not think there was any moral or legal justification of such an assumption on the part of appellants, since respondents made reductions in rent always on the condition that all other terms of the agreement of December 15, 1930, should continue in full force and effect.

■ The decree contains a manifest error in a respect not called to the attention of the trial court. It provides that the term shall end March 1, 1937. The agreement provided that the term should commence as of date of occupancy. Appellants took possession January 31, or February 1, 1931. The term would, therefore, terminate January 31, 1937. The judgment will be affirmed, with this modification.

Since the error was patent and obviously would have been corrected had it been called to the court's attention, appellants, failing to do so, are not

entitled to their costs on appeal. *Abrahamson v. Burnett,* 157 Wash. 668, 290 Pac. 228.

BEALS, C. J., STEINERT, MITCHELL, and HOLCOMB, JJ., concur.