[No. 25387.   Department Two.   April 22, 1935.]

LOUIS LAMKEN, *Respondent,* v. DAVE MILLER *et al.,*
*Appellants.*[1]

[1]Reported in 44 P. (2d) 190.

*Bausman, Oldham, Cohen & Jarvis* and *Perry R. Gershon,* for appellants.

*Mark M. Litchman* and *Sullivan & Wheeler,* for respondent.

HOLCOMB, J.—This appeal is from a judgment granted by the trial court, after a trial without a jury, enjoining appellants from in any way molesting or interfering with respondent and his right to the possession of two stands known as the Lamken stands at Longacres race track, King county, Washington, and his right to operate those stands for the exclusive sale of cigars, cigarettes, tobacco, candy, novelties, pop, ice cream, milk, popcorn, peanuts, gum and hot dogs there and in the grandstand, stables and grounds, excepting the club house at Longacres race track, until September 4, 1934. It is further adjudged and decreed that appellants and each of them be enjoined from taking possession of the two Lamken stands, from entering into any agreement with any third person for the purpose of selling or handling any of the products set forth in the preceding paragraph of the decree, in the grand stand, stables or grounds, excepting the club house at Longacres race track, and from operating such concessions themselves until September 4, 1934.

The facts adduced to the trial court were, in substance, these: The Washington Jockey Club operated a race track at Longacres, and before the racing season of 1933, appellant Miller entered into a written agreement with the jockey club by which Miller, or a corporation to be formed by him, was to have the exclusive concession for the sale of food stuffs and beverages at the race track. Appellant Edris appears to have been a silent partner with Miller. Miller then formed the corporation known as Washington Con-

cessions, Inc., which took over this contract from Miller, the individual.

Appellant Miller had agreed with the jockey club that he would deposit seventy-five hundred dollars for the privilege of selling food and drinks at the racing track and pay a rental of twenty-five per cent on all gross receipts. He was unable to raise the necessary funds, and tried to induce one Hoskins to enter into an agreement and deposit twenty-five hundred dollars. He was doubtful of the venture and declined the proposition.

Later, respondent, an experienced concessionaire, agreed to raise one thousand dollars upon the same terms offered to Hoskins, which Miller agreed to accept, as a part of the deposit for the privilege. Respondent procured the one thousand dollars, and in July, 1933, it was deposited for the purpose of obtaining the privilege.

The concession, or lease, or whatever it is to be called, was to exist for two years. Respondent was to account for thirty-three and one-third per cent of the gross sales for two years. After that agreement had been made, they agreed to some other details, principally to the effect that respondent should report sales every night in order that appellants could account to the jockey club for its twenty-five per cent. Later, they made another agreement for the stable stand, which had not been included in the original agreement.

Respondent undertook to operate the stand and to make the accounting required during the two years that the privilege should exist. Each week, respondent received a statement from appellants of the receipts and expenditures of the moneys taken in by respondent. In each and every one of the statements was a showing that one-third of the gross proceeds

was deducted each week as "rent." Respondent bought merchandise, hired and discharged all of the help needed, bought lumber and other materials at a cost of five hundred dollars, and purchased other equipment for which he expended between two and three hundred dollars for the erection of two permanent stands.

Some time after the payment of the money and the construction of the permanent stands, appellants organized the corporation which took over respondent's agreement. Before the racing season opened on August 4, 1933, appellants induced respondent to let them handle his daily receipts, because they had to pay twenty-five per cent on everything taken in, to the jockey club, to which respondent assented. After the termination of the racing season in 1933, new plans were drawn by appellant Miller for the construction of the stable stands which respondent was to handle during the 1934 season.

Although respondent lost money during the first four weeks, or until a few days before September 5, 1933, the remaining six weeks were profitable. At the close of the season, he had made a net profit of $754.55, which together with the value of the stands, five hundred dollars, made a total of $1,254.55. In several conversations between respondent and appellants concerning the ensuing racing season of 1934, occurring between September, 1933, and March, 1934, respondent was assured by appellants that the racing season of 1934 would be better, for which it was better to be prepared. He therefore purchased additional equipment at an expense of several hundred dollars.

In April, 1934, a month or two before the season of that year would open, appellant Edris decided to handle the stands and concessions himself, and told

respondent that he was through unless he would accept a different proposition in the nature of employment. This, respondent refused, and appellants thereafter refused him permission to take possession of his stands or to do anything to take care of his business for the ensuing season of 1934.

This present action, by the amended complaint, was brought for an injunction, claiming that the prospective profits for 1934 would amount to at least $4,500; because respondent would have more experience; there would be a sixty day racing season in 1934 instead of forty days, as in the first year; there would be Sunday races; the elimination of the dog-race competition would be of benefit; and there would be an increase of attendance because of reduction in admission prices to the race track.

█ In passing, we desire to call attention to the fact that, although the statement of facts contains 256 pages, no abstract has been supplied. This violation of our rule not having been moved against by the respondent, we shall not act *sua sponte*.

The essential question to determine is the nature and validity of the oral contract.

█ Under the errors assigned, it is first contended that, since the agreement was concededly for a two-year period and was oral, recovery is barred by the statute of frauds. Rem. Rev. Stat., § 5825(1). To sustain that contention, appellants rely principally upon *Union Savings & Trust Co. v. Krumm*, 88 Wash. 20, 152 Pac. 681, and *Sunset Pacific Oil Co. v. Clark*, 171 Wash. 165, 17 P. (2d) 879.

The *Union Savings & Trust Co.* case, *supra,* was one involving a contract for services which could not have been performed within a year, but the facts differed from those here. The *Sunset Pacific Oil Co.* case,

*supra,* involved the right of a salesman under an oral contract for services for more than one year, in which case we held that the doctrine of part performance, taking an oral contract out of the operation of the statute of frauds, has no application to a contract that is void because it was not to be performed within one year, under Rem. Rev. Stat., § 5825 [P. C. § 7745]; and that partial recovery upon a *quantum meruit* for such services rendered by a sales agent, primarily for his own benefit, under such oral contract which was void because not to be performed within one year, could be allowed only for doing something not required in the original contract.

It is plain that the trial court granted injunctive relief on the theory of the complaint that it was a lease or sub-lease by the Washington Jockey Club to respondent. If true, it is not a contract for service or a contract of employment between respondent and appellants.

In *Gottlieb Brothers v. Culbertson's,* 152 Wash. 205, 277 Pac. 447, we held that, where space in a general store was rented for the sale of furs, with light, heat and janitor service furnished by the store, and fifteen per cent of the gross sale of furs was charged for the space, the relation existing was that of landlord and tenant.

In *Barnett v. Lincoln,* 162 Wash. 613, 299 Pac. 392, we stated that no particular words, technical or otherwise, are necessary to constitute a lease; and that the existence of the relationship of landlord and tenant is primarily a fact question to be determined from the intent of the parties, ascertained from a consideration of the entire instrument creating the tenancy; and that, if exclusive possession or control of the premises, or a portion thereof, is granted, even though the use

is restricted by reservations, the instrument will be considered to be a lease and not a license. We also cited many cases and texts therein.

The following cases, cited by appellants as sustaining their contention that respondent was a mere licensee and not a lessee, were all cases involving licenses or permits which did not give the right to the licensee to the exclusive use of the premises in question: *Mackay v. Minnesota State Agricultural Society,* 88 Minn. 154, 92 N. W. 539; *Becher v. New York,* 92 N. Y. Supp. 460; *Holt v. Montgomery,* 212 Ala. 235, 102 So. 49; *Gialonella v. Seff Advertising Co.,* 111 N. J. Eq. 218, 161 Atl. 824; *Taylor v. R. C. Maxwell Co.,* 31 Fed. (2d) 711; *Forsyth v. Nathansohn,* 139 Ore. 632, 9 P. (2d) 1036, 11 P. (2d) 1065; *Boley v. Butterfield,* 57 Utah 262, 194 Pac. 128; *McCarthy v. Kiernan,* 118 Ore. 55, 245 Pac. 727; *Kibben v. McFaddin,* 259 S. W. (Tex. Civ. App.) 232.

In this case, respondent was granted the exclusive use of the premises of the Washington Jockey Club on its race track at Longacres to sell the merchandise described in the court's decree.

It being determined to be a lease and not a . license, the question remains whether, being an oral contract, it is enforceable.

We have held in numerous cases that the ban of the statute may be escaped by part performance by lessees against lessors. *Rowland v. Cook,* 179 Wash. 624, 38 P. (2d) 224, and the cases there cited. To the same effect is *Jones v. McQuesten,* 172 Wash. 480, 20 P. (2d) 838.

We conclude that the contention of appellants is untenable that the contract did not constitute a lease, and is not enforceable for the two years, but became valid by part performance.

Having found that the contract was one of lease and not of employment, it is hardly necessary to discuss the second contention of appellants that it was terminable at any time within one year by the corporation, by discharging respondent. However, in passing, we wish to call attention to the new uniform business corporation act, now codified as Rem. 1934 Sup., § 3803-1 [P. C. § 4592-31], et seq.

Section 3803-32 [P. C. § 4592-62], reads:

"4. Any officer or agent may be removed by the board of directors whenever in their judgment the best interest of the corporation will be served thereby, such removal, however, shall be without prejudice to the contract rights of the person so removed."

This statutory provision will have the probable effect of annulling some of our previous decisions under our former domestic corporation statutes.

■ Appellants also insist that respondent had an adequate remedy at law, because of which no injunctive relief should have been granted. Without discussing and distinguishing our cases cited by appellants, the general rule is that, where the remedy at law is clearly inadequate, or when, on account of the statute of frauds, or for any other reason, no action at law will lie on the contract in question, 25 R. C. L. 229, equity will intervene. It has been several times so decided in this state. *Metzger v. Arcade Building & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288; *Zinn v. Knopes*, 111 Wash. 606, 191 Pac. 822, and cases cited; *Income Properties Investment Corporation v. Trefethen*, 155 Wash. 493, 284 Pac. 782, and cases cited. To the same effect is *Belvedere Hotel Co. v. Williams*, 137 Md. 665, 113 Atl. 335, 14 A. L. R. 622.

It is obvious that respondent would be unable to ascertain what the profits for the 1934 racing season would be at the time he was compelled to bring his

552

action. It was purely conjectural what the anticipated profits would be.

We conclude that the judgment of the trial court was in all things correct, and it is affirmed.

MILLARD, C. J., MITCHELL, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—I dissent. Whatever the agreement was, it was not a lease. It did not purport to accord respondent the right of possession to any specific property—the first essential of a lease. The agreement was simply a contract for personal services and, being for more than one year, comes under the ban of the statute of frauds.