[No. 28571. Department Two. May 2, 1942.]

EDWARD F. GARBRICK *et al., Respondents,* v. ANNETTA
ADALINE FRANZ *et al., Appellants.*[1]

*Chas. A. Cave* and *James G. Mulroy,* for appellants.

*Jno. Mills Day* and *Arthur M. Harris,* for respondents.

SIMPSON, J.—Plaintiffs instituted this action to have
reformed and enforced a defective lease upon real
property. A trial to the court resulted in the entry of
a decree reforming and correcting the lease and enjoin-
ing the defendants from interfering with plaintiffs' pos-

[1]Reported in 125 P. (2d) 295.

session and enjoyment until the time of the expiration of the lease. Defendants have appealed. The assignment of error is in ruling that plaintiffs have any rights in the property subsequent to November 4, 1940.

The facts may be stated as follows: Prior to and on November 4, 1938, appellant Annetta Adaline Franz, the wife of appellant Carl Franz, owned in her own right the property in question. On the date just mentioned, Mrs. Franz and respondents entered into the following written agreement:

"This Agreement made and entered into this 4th day of November by and between Mrs. Carl Franz, owner, and E. P. Garbrick and Paul V. Myers Witnesseth:

"That the said lessor does by these presents lease, demise for his own use let unto the lessee the following described premises in King County State of Washington to wit

"100 ft. frontage by 300 ft. deep by 150 ft. lower width by 121 ft. by 100 ft. by 200 ft. one acre more or less

"For and during the term of five years beginning this the fourth day of November 1938 and ending on the fifth day of Nov. 1943 at the annual rental of ($25) twenty five dollars a year of which sum ($25) one years rental has been paid at the execution of this lease. They shall has the privilege of buying if they so choose.

"Failure of the lessee to pay rental promptly when due shall work a forfeiture of this lease and no act of the lessee shall release him from his obligation without the written consent of the lessor.

Mrs. Carl Franz (lessor)<br>E. P. Garbrick<br>Paul V. Myers

"Subscribed & sworn to before me this 4th day of November, 1938.           Stanley W. Brown
                                  Notary Public in and for the
                                  State of Washington, resid-
(Notary Public Seal)       ing at Auburn.

"Any buildings constructed by lessee on above land may be removed at successful termination of this lease.

Furthermore any taxes upon such buildings will be paid by lessee."

The real property had been used as a garden just prior to the signing of the lease. After the signing of the agreement, respondents paid the rent for the first two years of the leased period and taxes levied on account of buildings erected by themselves. After taking possession, respondents, with the knowledge of appellants Franz, proceeded to make certain improvements consisting of the building of a house, a sawmill, lumber shed, and a fence at a cost of $1,225. In addition, they placed machinery in the sawmill at a cost of four hundred dollars. The repair of the road and the installation of some water pipe entailed an outlay of one hundred dollars. They then installed a lumber yard and have since been engaged in conducting a retail lumber business on the property. The buildings were of frame construction and placed upon concrete blocks and sills. The evidence indicates that respondents exhausted their financial resources in making their improvements.

Respondent Edward Garbrick testified as follows:

"Q. Isn't it a fact that all the improvements and the buildings that you mentioned in your complaint, which you have there now, which you have testified about, were put on the property for your own benefit? A. That is right. . . . Q. (Mr. Mulroy) Then, Mr. Garbrick, you knew under the terms of your lease you had the privilege of removing those buildings at any time? A. Yes, that is right, and I also had the privilege of buying it if we chose. Q. At any rate, you had the privilege of removing the buildings? A. Yes. Q. And they were at all times your property? A. Yes. Q. And the road was built for your convenience? A. Yes. Q. And there wasn't any road there before? A. There was a road there, just like you would go driving through a pasture. Q. At any rate, it was not

satisfactory? You couldn't use it? A. No; so we graveled it. Q. And the pipeline was for your convenience? A. Yes."

September 9, 1940, Mrs. Franz conveyed the real estate to appellants May, who had full knowledge of the contents of the lease and that extensive improvements had been made by the tenants. Immediately thereafter, the purchasers demanded possession of the land leased to respondents and, upon their failure to deliver possession, a notice to terminate the tenancy was served upon plaintiffs. This suit was then instituted.

The lease was defective for two reasons. First, the property was not sufficiently described, and second, the instrument was not acknowledged by the lessor as provided by our statute of frauds, Rem. Rev. Stat., § 10618 [P. C. § 3553], which reads:

"Tenancies from year to year are hereby abolished, except when the same are created by express written contract. Leases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses, or seals."

The trial court concluded "that the doctrine of estoppel should apply in this case."

An unacknowledged lease has no more force than an oral lease. *Omak Realty Inv. Co. v. Dewey,* 129 Wash. 385, 225 Pac. 236. An unacknowledged lease of real estate for a period longer than one year only creates a tenancy of month to month or in some instances from period to period. *Dorman v. Plowman,* 41 Wash. 477, 83 Pac. 322; *Omak Realty Inv. Co. v. Dewey, supra; Hansen v. Central Inv. Co.,* 10 Wn. (2d) 393, 116 P. (2d) 839.

It is well settled in this and many other states that a sufficient part performance by a lessee of the

covenants contained in a lease removes the contract from the statute of frauds and authorizes a court of equity to decree the specific performance of the agreement by the lessor.

The exception to the statute of frauds, which compels a lease of real estate for more than one year to be in writing and requires it to be acknowledged by the lessor, rests upon the principle that a court of equity will not allow the statute to be used to perpetrate a fraud. The test as to whether the exception applies may be found in answer to the question: Have the acts of one of the parties changed his situation to such an extent that he cannot be adequately compensated in damages or placed in his original position? If the party should be put in that position, the contract, though otherwise void, may be enforced in equity.

The question for decision here is whether the acts of respondents in erecting the buildings and in making other improvements were sufficient to make the statute of frauds inapplicable. The decisions of this court are in harmony with the general rule that part performance by a lessee will remove the contract from the statute of frauds.

Though *McGlauflin v. Holman,* 1 Wash. 239, 24 Pac. 439, *Schulte v. Schering,* 2 Wash. 127, 26 Pac. 78, nor *Schulte v. Littlejohn,* 2 Wash. 129, 26 Pac. 79, were decided upon the merits, this court did hold that part performance of a lease made the statute of frauds inapplicable.

In *Snyder v. Harding,* 38 Wash. 666, 80 Pac. 789, it was held that a tenant on shares, holding over after the first year under an invalid lease after payment of the first year's rent, was entitled to a division of the crops.

*Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852. The lease of real property construed in

this case was one for a term of five years. It provided that the lessees would care for a flock of goats and would clear land to the amount of one hundred dollars per year. The lessees performed their part of the agreement and on that account sought to take the lease from the statute of frauds. The case was presented upon the findings of fact in which the trial court found that permanent improvements were made on the premises to the value of three hundred dollars, but did not find that the improvements increased the rental value of the premises. In passing upon the question, it was stated:

"It, of course, is inferable that such improvements would increase the rental value to some extent, but the amount is conjectural, and as the appellants are relying on an equitable principle, the burden was upon them to show that they would suffer some material injury if the ordinary rules of law were enforced against them."

*Dorman v. Plowman, supra.* Here the court held that an invalid lease for a term of years was a period to period lease after the first year.

In *O'Connor v. Oliver,* 45 Wash. 549, 88 Pac. 1025, defendants interposed the defense to a quiet title action that they had by oral contract leased the premises for the farming season of 1905, promising to pay rental of one-third of the crop which was growing on the premises. This court held that the trial court was in error in allowing defendants to introduce proof to the allegations contained in the answer and, in passing upon the question, said:

"There can be no doubt that the answer stated a defense entitling the defendants to possession of the land until the crop was gathered. The rule applicable to the facts in this case was stated in *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, where we said:

" 'An oral lease, therefore, where possession of the

property has been taken, is not void in toto, but it may not be a lease for the term agreed upon. If the rent reserved is to be paid periodically it is a lease good for one of such periods, but subject to be terminated at the end thereof, or at the end of any other of such periods. Thus, under the statute, where one enters into the possession of real property under an oral lease for a definite time with periodic rent reserved, he is not a tenant for the time agreed upon, but a tenant from period to period, corresponding to the times on which rent is payable.' "

In *Northcraft v. Blumauer*, 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071, a parol lease of a logging right of way for a longer period than one year was not set aside at the instance of the landlord where the record showed that the lessee took possession with the lessor's consent, constructed a road at an expense of five thousand dollars, benefited the land by digging ditches, and purchased the lessor's timber as an incident to procuring the right of way.

*Koschnitzky v. Hammond Lbr. Co.*, 57 Wash. 320, 106 Pac. 900. In this case, the court construed an unacknowledged lease of a logging right of way for a period of ten years. The facts disclosed that the lessee built a railroad at a cost of forty thousand dollars, pulled stumps from the property, and cleared a stream, all in accordance with the terms of the lease. This court held that, because of the work done and the money expended, the case fell "squarely within the rule that possession and part performance" took the case out of the statute of frauds.

*Forrester v. Reliable Transfer Co.*, 59 Wash. 86, 109 Pac. 312, Ann. Cas. 1912A, 1093. We held that a lessor who had expended large sums of money in fitting out the premises and in preparing it for the use of the lessee, which repairs were not beneficial to the estate,

could recover damages under the provisions of an unacknowledged lease.

In *Matzger v. Arcade Building & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288, we upheld a defective lease for the reason that the tenant had spent large sums of money in improvement and in complying with requirements imposed by the lessor. In that case, the owners of the property contended that estoppel could only be raised by one of two things: (a) by entry under the lease and payment of rent in advance for the entire term; (b) by such entry and a making of permanent improvements by the tenant, enhancing the rental value of the freehold. In rebutting the lessor's contention, the court said:

"This court has never held that the payment for the entire term in advance and of the full rent reserved is a requisite to the upholding of an unacknowledged lease or even of an oral lease. On the contrary, it is fairly borne out by our own decisions that the taking of possession by the lessee and the payment of a part of the consideration or performance of work as a part of the consideration, if such payment or work is a part of the consideration inducing the lease and going to the entire term in addition to the rental to be paid at stated periods throughout the term, constitutes such part performance as to sustain the lease for the entire term. While never announcing the foregoing in so many words, a consideration of our own decisions will show that these elements have largely entered into them and not the single element of improvements made by the tenant increasing the rental value. *McGlauflin v. Holman*, 1 Wash. 239, 24 Pac. 439; *Schulte v. Schering*, 2 Wash. 127, 26 Pac. 78; *O'Connor v. Oliver*, 45 Wash. 549, 88 Pac. 1025; *Northcraft v. Blumauer*, 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071; *O'Connor v. Enos*, 56 Wash. 448, 105 Pac. 1039."

The opinion continues as follows:

"The appellant's argument seems so to construe the doctrine of estoppel as to limit its operation to cases

where the estoppel arises from the benefits received by the lessor; that is, where the lessee has so improved the property as to add to its rental value. Though cases in which the estoppels were based upon these circumstances are cited, no case is cited which expressly so limits the doctrine or so limits it by fair implication. The general doctrine of estoppel is much broader than this. It applies not only to estop one who receives and retains a benefit from denying the validity of the transaction from which he receives it, but it also applies to estop one party to a transaction from denying the validity of the transaction which, if not sustained as valid, would put the other party, who has acted on the faith of the first party's attitude therein, in a materially worse position than he would otherwise have been. *O'Connor v. Oliver, supra,* was clearly a case of that kind. The tenant, having prepared the land and put in the crop, whether it benefited the other party or not, would have been materially damaged by loss of his work had the lease not been held valid for the entire term, notwithstanding the fact that it was verbal. It is a fallacy to assume that, as against the lessor, estoppels can only arise in favor of the lessee by the making of improvements by the lessee on the faith of the lease, beneficial to the freehold, increasing the rental value and which the tenant cannot take away. This is only one side, or, more correctly speaking, one phase of the doctrine of estoppel. We know of no reason, and none has been suggested, why one denying a contract of lease is more immune from the broad principle of equitable estoppel than one who denies any other contract. That the broad principle of equitable estoppel preventing a party to a transaction from asserting its invalidity in any case where the other party, acting on the faith of the first party's attitude touching the contract and its subject-matter, has placed himself in a position where it would be inequitable to hold the contract invalid to his injury."

Again, it was stated:

"The language which we have quoted construes our own decisions not as limiting the doctrine of equitable estoppel as applied to the sustaining of contracts of

lease, but as recognizing that doctrine as applicable to such contracts with like force and to the same extent as to other contracts. A careful consideration of our own decisions convinces us that what is said in some of them relative to estoppels by improvements made by the tenant beneficial to the freehold was said because that was the only estoppel claimed in the given case, not because that was the only fact which could work an estoppel in any case. In each of the cases called to our attention and chiefly relied on by the appellant where written leases have been held invalid for lack of acknowledgment, there was apparently an absence of sufficient facts invoking the principle of equitable estoppel on any ground."

*Grubb v. House*, 93 Wash. 200, 160 Pac. 421. The good will of a lessee's hotel business does not operate as a permanent improvement by the lessee so as to remove the bar of the statute of frauds as to an unacknowledged lease for five years.

In *Armstrong v. Burkett*, 104 Wash. 476, 177 Pac. 333, 180 Pac. 873, a tenant attempted to sustain an oral lease by proving that she made expenditures in building wall cabinets, shelves, and in changing the front of the store building, in building up the business upon which she was totally dependent, and upon the fact that she could not get another location and had ordered goods for the Christmas trade. In holding there was nothing to take the case out of the statute of frauds, the court stated:

"But manifestly these things are not matters of estoppel. The things done were all for the benefit of the lessee and were in no sense a consideration going to the entire term. The purchase of goods and the building up of a business, as well as the purchase of seasonable goods, were all incident to the contract. Defendant is charged with the knowledge that her lease was oral and subject to forfeiture from month to month and that she might have provided against such consequence by insisting upon a sufficient contract.

"If one who enters into possession of business prop-

erty can keep possession indefinitely by fitting the premises to the uses and convenience of his particular business, by paying his rent, and by the purchase of goods to meet anticipated trade, possession once obtained would be better than any written lease, for the lessee could continue possession at his own will at the rent first stipulated, and unhampered by the usual covenants and conditions of a written lease.

"To make an oral lease good for one year under the theory of estoppel there must be some element of benefit to the landlord aside from the rent reserved, or some injustice to the tenant that a court of equity will not tolerate, as, for instance, where the landlord has made the lease conditioned upon some alteration or improvement that would enhance the value of the property, or where the value of the property lies in the taking of an annual crop. In other words, the mere possession, the payment of rent and the conduct of a business in the usual way and for the sole benefit of the tenant, unaccompanied by circumstances which will create a consideration going to the term, will not make an oral lease from month to month a term lease resting in estoppel."

In *Lautenschlager v. Smith,* 155 Wash. 328, 284 Pac. 87, this court held that taking possession of land under an oral lease in the spring, putting stock thereon, and summerfallowing it preparatory to sowing winter seed, and thereafter spring seed, is a sufficient part performance to take the oral lease out of the operation of the statute of frauds. In this case we cited *Matzger v. Arcade Building & Realty Co., supra,* with approval.

*Rowland v. Cook,* 179 Wash. 624, 38 P. (2d) 224, 101 A. L. R. 180, upheld a lease otherwise void where it appeared that the lessor built a balcony at an expense of fifteen hundred dollars for the use and benefit of the lessee. This case followed and quoted from *Matzger v. Arcade Building & Realty Co., supra.*

In *Lamken v. Miller,* 181 Wash. 544, 44 P. (2d) 190, it was held that an oral lease of stands at a race track

for the exclusive sale of food stuffs and beverages for a period of two years was enforcible because of part performance, where it appeared that considerable expense had been incurred in building the stands and the operation during the first year, and by the purchase of additional equipment for the second year under the assurance that the conditions would be better. The total amount expended by the lessee in this case was $1,254.55.

The foregoing recital of our holdings indicates that somewhat different views were expressed by the writers of the opinions in the *Matzger* and *Armstrong* cases, *supra*. It will be noted, however, that this court has adhered to and followed the rule as established by the *Matzger* case in *Lautenschlager v. Smith, supra, Rowland v. Cook, supra,* and in *Lamken v. Miller, supra.*

In view of the facts that courts of equity will not allow the use of the statute of frauds to perpetrate a fraud, and that adherence to the strict wording of the statute would work a fraud upon individuals in the position of respondents, we feel committed to the rule as laid down in the *Matzger* case.

It is admitted that respondents expended large sums of money in improving the leased property to the end that they might use it for the entire term and that all of the improvements were made with the knowledge and consent of the owners of the real estate. Respondents expended their time, labor, and money in their planned effort to operate the mill and the lumber business for the full period mentioned in the lease. Their expenditures were comparable in amount to those mentioned in the *McGlauflin* and *Lamken* cases, *supra*, and in considering the extent of respondents' business not disproportionate to the amount expended by the lessees in the *Northcraft* and *Koschnitzky* cases, *supra*.

To oust respondents from their possession at this time would work upon them an unconscionable injustice. Viewed in the light of the facts in this case and our conclusions respecting the rule to be applied, we must hold that the improvements made by respondents upon the leased premises were sufficient part performance of the contract of lease to take it out of the statute of frauds and make the lease good for the full term.

The judgment is affirmed.

ROBINSON, C. J., BEALS, JEFFERS, and BLAKE, JJ., concur.