[No. 22584. Department One. October 6, 1930.]

ELLA HIMPEL, *Appellant*, v. CHARLES G. LINDGREN, *Respondent*.[1]

[1]Reported in 291 Pac. 1085.

*John Wilkinson,* for appellant.

*Waldemar Seton* and *Bates & Burnett,* for respondent.

PARKER, J.—The plaintiff, Mrs. Himpel, commenced this unlawful detainer action in the superior court for Clark county, seeking recovery of possession of her dairy farm in that county from the defendant, Lindgren. He had gone into possession of the farm under a lease contract with her. Her claimed right to be restored to possession is rested upon the theory that the tenancy was, in legal effect, only orally created, and was only from year to year, and that she lawfully terminated it by appropriate notice to Lindgren prior to commencing this action. His claimed right to retain possession is rested upon the theory that the tenancy was created by written contract between them for a term of four years; which contract, though voidable as a lease for more than one year because unacknowledged, became in law and equity a valid, binding lease contract for that term by virtue of part performance.

The cause proceeded to trial before the court sitting with a jury, and resulted in verdict and judgment denying to Mrs. Himpel the relief sought by her and awarding to him the continued right of possession under the lease as a tenant for the term of four years. From this disposition of the case in the superior court, Mrs. Himpel has appealed to this court.

On June 21, 1928, Mrs. Himpel entered into a lease contract in writing with Lindgren, by the terms of which she leased to him her dairy farm in question, including the livestock and equipment thereon, for a stated term of four years from July 1, 1928. This lease contract was legally executed by both of them in all respects, except that its execution was not acknowledged as required by law. The rent stipulation of the lease reads as follows:

"The lessee agrees to pay as rent for said premises by his work and labor in conducting said farm according to good husbandry; that he will care for all cattle and other animals upon said place to the best advantage and that he will pay to the lessor fifty per cent of all profits accruing out of the operation of said premises and cattle, and that he will, each month, account to the lessor for all receipts during the preceding month; and that the lessor, in addition to receiving fifty per cent of the net proceeds of the operation of the farm, shall also receive fifty per cent of all increase in stock now or hereafter on said premises."

On June 27, 1928, Lindgren moved, with his family, into the dwelling house upon the farm, and proceeded with the performance of his part of the lease contract, accounting for the profits from that date, which was regarded by him and Mrs. Himpel as the commencement of the term of the tenancy, though the lease stated July 1, 1928, as the commencement of the term. On May 29, 1929, Mrs. Himpel caused to be served upon Lindgren notice of her declared termination of the tenancy on July 27, 1929, and demanded that he then surrender to her possession of the leased property. Mrs. Himpel's claimed right, so demanded, was rested upon the theory that the written lease contract, being unacknowledged, constituted in law nothing more than an oral lease from year to year, which could be, by her,

terminated by notice upon the expiration of any year period of such indefinite term.

Lindgren refused to comply with that notice and demand, his claimed right of continued possession during the four-year term being rested upon part performance upon his part, of the lease contract, in the form of things done and labor performed by him as contemplated by the contract, the benefits of which would be, in a large measure, lost to him unless he reap the benefits of the full four-year term; which things done and labor performed by him also contributed to the increased value of the farm. On July 9, 1929, Mrs. Himpel commenced this action in the superior court. The controversy there waged was practically wholly upon the question of Lindgren's defense of part performance and the estoppel arising therefrom as against Mrs. Himpel's claimed termination of the tenancy at the end of the first year.

It is first contended in behalf of Mrs. Himpel that Lindgren's defense of part performance and the estoppel thereby arising as against her, being in its nature equitable and not strictly legal, such defense was not available to him in this unlawful detainer action. In this connection, it is to be remembered that this is not a question of "forcible entry," as defined by § 810, Rem. Comp. Stat., or "forcible detainer," as defined by § 811, Rem. Comp. Stat., but is a question of "unlawful detainer," as defined by § 812, Rem. Comp. Stat., by a tenant who acquired lawful possession under a tenancy contract with the owner of the premises. It has become the settled law in this state that equitable defenses are available to such a tenant, when he is sought to be dispossessed by an unlawful detainer action prosecuted against him by his landlord. *Brown v. Baruch,* 24 Wash. 572, 64 Pac. 789; *Teater v. King,* 35 Wash. 138, 76 Pac. 688; *Andersonian Inv. Co. v.*

*Wade,* 108 Wash. 373, 184 Pac. 327; *Income Properties Inv. Co. v. Trefethen,* 155 Wash. 493, 284 Pac. 782. We conclude that this equitable defense is available to Lindgren in this unlawful detainer action.

It is further contended in behalf of Mrs. Himpel that the court erred in submitting the cause to the jury for decision, more particularly in submitting to the jury the question of part performance by Lindgren and estoppel arising therefrom as against Mrs. Himpel's right to deny the validity of the lease contract for the full four-year term. The theory of this contention is that such issue is exclusively of equitable cognizance and is therefore triable by the court without a jury.

Generally speaking, questions of equitable cognizance are triable by the court without a jury, though the court may submit to a jury questions of fact to be determined incident to controversies of equitable cognizance, and receive their verdict as advisory. It is not made plain in the record before us as to how the trial judge regarded the jury's verdict in this respect, so it seems plain that, at all events, we cannot say that he committed error in submitting the facts touching this equitable phase of the controversy to the jury. We note in this connection that, according to the provisions of Rem. Comp. Stat., § 824, facts in issue in unlawful detainer actions are triable by jury as in other cases, and that the cases of *Brown v. Baruch,* 24 Wash. 572, 64 Pac. 789, *Teater v. King,* 35 Wash. 138, 76 Pac. 688, and *Metropolitan Building Co. v. Curtis Studio,* 138 Wash. 381, 244 Pac. 680, wherein the affirmative defenses were of equitable cognizance, were tried by jury in the superior court, though apparently no question of the necessity of their being so tried was raised in those cases.

■ It is further contended in behalf of Mrs. Himpel that, at all events, she is entitled to judgment in her favor notwithstanding the verdict; this because the evidence does not support Lindgren's defense of part performance and estoppel arising therefrom as against Mrs. Himpel. The evidence seems to us to rather plainly show the following summarized facts: When Lindgren went into possession under the lease, the farm was in a very much run-down condition. During the first year of the term, he rebuilt and repaired the fences to the extent of replacing several hundred posts therein. He regraded and materially improved the private road upon the place, leading from the county highway into the farm buildings. He removed from about the barns and outbuildings of the farm a very large quantity of manure and spread it over the land to fertilize it. He planted some twenty acres of winter oats, to be harvested at the end of the crop season of 1929, which would be after the expiration of the first year of the tenancy. He planted some ten acres of winter wheat, to be harvested at the end of the crop season of 1929, which would be after the first year of the tenancy. He caused to be bred, and cared for, a number of cows, the offspring of which he would not reap the profits from, except his tenancy continued beyond the first year thereof. He planted grass seed with the grain, with the view of producing hay crops upon that ground during the years after the first year of the tenancy.

At the time he was served with notice by Mrs. Himpel of the termination of the tenancy near the end of the first year, he had so improved the farm by his care of it during the first year as to place it, including its buildings and its surroundings, in a high state of repair and efficiency, much superior to the condition of the farm when he went into possession of it under the

lease. All that he did during that year was manifestly with the knowledge, consent and approval of Mrs. Himpel, and within the spirit of his obligations under the lease contract. Clearly, we think, it would be inequitable to allow Mrs. Himpel to claim the lease contract as invalid because of want of formal acknowledgment in its execution. Whether we regard the verdict of the jury as being merely advisory, or as binding upon the trial court calling for a judgment in conformity therewith, the evidence, at all events, calls for the judgment which was rendered. Our decisions in *Zinn v. Knopes,* 111 Wash. 606, 191 Pac. 822, and *Lautenschlager v. Smith,* 155 Wash. 328, 284 Pac. 87, lend strong support to this conclusion. One or two other errors are claimed and briefly argued, but we think they are wholly without merit.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.