[No. 552-3.  Division Three.  November 16, 1972.]

LOURON INDUSTRIES, INC., *Respondent,* v. GLENN P. HOLMAN *et al., Appellants.*

*George E. Heidlebaugh,* for appellants.

*Robert F. Ewing* (of *Morrison, Huppin, Ewing & Anderson*), for respondent.

EDGERTON, J.—Respondent sued appellants for specific performance of an agreement to sell real estate, and joined as party defendants John H. Morse and wife, alleging Morse to be the agent of appellants. Morse cross claimed against appellants for a real estate sales commission, and appellants cross claimed against him for damages. The trial court gave respondent judgment for specific performance but denied Morse a commission, and denied appellants damages. From the judgment of specific performance and denial of damages this appeal is taken. There is no appeal from the judgment denying commission to Morse.

The issues on appeal are whether respondent is entitled to have judgment for specific performance, and appellants damages against Morse.

Appellants Holman and Schlichtig each owned a parcel of land in Spokane, Washington, the two parcels adjoining each other. To facilitate their rental the appellants combined them in a single economic unit, and for many years hired John H. Morse to manage the property. He found tenants, collected rents, appraised the property, placed advertisements in newspapers concerning the rental or sale thereof, and paid any bills. Then, after deducting the bills and his charges from the rent, he mailed the balance to Holman, who in turn would remit Schlichtig's share to him. Holman gave Morse instructions, told him to try to sell the property if it did not rent, and joined him in dealing with prospective lessees. In response to a newspaper advertisement Luard Gilmore, president of respondent, contacted

Morse about renting the property. Morse showed it to him and introduced Gilmore and his wife to Holman, who told them that Morse managed the property for him and Schlichtig and that "everything was really left up to Morse." April 1, 1971 a lease of the premises was executed by respondent and John H. Morse, as agent of the owners. It contained this provision: "They are also granted first chance to purchase said property during lease term."

Less than a month later appellants received an offer from another party to purchase the property for $15,000. Jointly consulting John Campbell, a Spokane lawyer, as to the effect of the "right of refusal language" contained in the lease, they were advised that before they could sell they must first offer respondent an opportunity to buy. Appellants instructed Campbell to write respondent their offer to sell the property for $15,000, payable $5,000 down and $200 per month with interest at the rate of 7 percent. On receipt of the letter Gilmore called Morse and accepted the offer. May 4, 1971 Morse prepared an earnest money receipt and agreement that included a $1,000 earnest money provision and a commission to be paid him by appellants. The Gilmores signed this for the respondent and Morse signed as appellants' agent. The downpayment was paid to Morse and the next day Campbell also signed. (He had been given a blank power of attorney by Holman to sign any documents pertaining to closing the real estate sale for him.) Then on May 7, 1971 Morse wrote to Schlichtig, informing him of respondent's acceptance. Schlichtig phoned his approval to Morse, making no objection to either Morse's or Campbell's actions. Evidence indicates that at that point all parties considered the deal made and it only remained to complete the closing. Gilmore, inquiring at Campbell's office about the closing date and costs, was told the contract was drawn and title policy ordered but the matter was delayed first because Campbell was out of town, and then because he had to get his clients together to sign the contract. Believing the contract made, respondent immediately set about making substantial improvements to the property beyond

what was permitted by the lease. In early July Holman called Morse to say there would be no commission for him, and wrote the respondent that appellants were not going through with the sale. Because appellants refused to close the sale, respondent brought suit for specific performance on July 20, 1971.

Appellants assign as error various findings of fact made by the trial court and its failure to enter their proposed findings of fact. They assert the findings entered are not based upon substantial evidence, and contend that neither Morse nor Holman nor Campbell had actual or implied authority to receive respondent's acceptance of appellants' offer to sell the real property in question. We disagree.

The evidence in support of the trial court's findings of fact and conclusions of law was sufficient and substantial. What was said in *Stringfellow v. Stringfellow,* 56 Wn.2d 957, 959, 350 P.2d 1003 (1960), applies here:

> Factual disputes are to be resolved by the trial court. The Washington constitution, by Art. IV, § 6, vests that power exclusively in the trial court. The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not. If we were so disposed, but we are not, we are not authorized to substitute our judgment for that of the trial court. [Citing cases.]

The evidence is that in response to appellant's offer to sell the real property respondent contacted Morse, as defendants' property manager. Plaintiff communicated its acceptance to Morse and Campbell. The trial court's findings and the evidence show Morse was agent for appellants and that they knowingly permitted him to hold himself out as their agent, even to sell their property. He had been introduced to respondent's president as the manager of the property. His signature alone was on the lease as agent for the appellants, who acknowledged his authority to make the agreement for them when they went to Attorney Campbell for an interpretation of its terms. Moreover, when advertisements were published in the newspapers

it was Morse who prepared and arranged for them. In this instance, both Holman and Schlichtig approved and agreed to the sale when informed of it by Morse. They did not balk until they learned that he was claiming a commission. If Morse did not have express authority, he did have apparent authority to represent the appellants, and there was a holding-out of agency on which the respondent could rely.

■ As stated in *Larson v. Bear*, 38 Wn.2d 485, 490, 230 P.2d 610 (1951):

> An agent may have what is termed "apparent" authority. It exists when, though not actually granted, the principal knowingly permits the agent to perform certain acts, or where he holds him out as possessing certain authority; or, as sometimes expressed, when the principal has placed the agent in such position that persons of ordinary prudence are led to believe and assume that the agent is possessed of certain authority, and to deal with him on reliance of such assumption. [Citing cases.]

Having concluded Morse to be appellants' agent, it follows that notice of acceptance given to him, the offeror's agent, was a sufficient communication to the offeror. When respondent communicated its oral acceptance to appellants' agent Morse, paid the earnest money, signed a written earnest money agreement, which in turn was signed by Morse, ostensibly the authorized agent of appellants, and by Campbell as attorney-in-fact for appellant Holman, a valid and enforceable contract was created.

Appellants next contend there was not a sufficient writing or part performance to take this case out of the statute of frauds. Again we disagree.

■■ In *Miller v. McCamish*, 78 Wn.2d 821, 826, 479 P.2d 919 (1971) the court stated:

> [T]his court has long held that an agreement to convey an estate in real property, though required by RCW 64.04.010 and 64.04.020 to be in writing with the formal requisites specified for a deed, may be proved without a writing, given sufficient part performance; and that specific performance will be granted where the acts

allegedly constituting the part performance point unmistakably and exclusively to the existence of the claimed agreement. [Citing cases.]

And in *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 528, 171 P.2d 703 (1946), the Supreme Court pointed out what are evidences of part performance, saying:

> The principal elements or circumstances involved in determining whether there has been sufficient part performance by a purchaser of real estate under an oral contract otherwise within the statute of frauds, are (1) delivery and assumption of actual and exclusive possession of the land; (2) payment or tender of the consideration, whether in money, other property, or services; and (3) the making of permanent, substantial, and valuable improvements, referable to the contract.

In considering these factors of part performance in relation to the facts of this case, respondent's possession of the real property in and of itself would not be sufficient to take the case out of the statute of frauds because possession had been gained under the terms of the lease rather than by the contract to purchase. That possession alone would not point unequivocally to the existence of a seller-buyer relationship but would be equally consistent with the relationship of landlord and tenant. However, the payment of the $1,000 earnest money to appellants' agent, when the terms of the lease called for $65 per month rental, was consistent with the sale and pointed toward a vendor-vendee relationship and was inconsistent with continuation of the lease. Moreover, the evidence shows that respondent made very substantial permanent improvements to the real property. These were in excess of those allowed by the terms of the lease and so they, too, were consistent with a sale rather than a lease. These factors bring the case within the rule announced above and constitute sufficient evidence of part performance to take the case out of the statute of frauds.

Appellants next urge that there was no contract for the court to specifically enforce because the agreement lacks

certainty in its terms and mutual assent. We find the contract did not lack either certainty or mutual assent. The undisputed evidence is and the trial court found: That appellants made a written offer to sell the property to respondent on specific terms, and that respondent accepted the offer when he agreed to comply exactly with those terms. He accepted orally, in writing, and by the payment of earnest money.

Again, appellants contend that since the real property in question is community property a sale by the husband without the wife's signature made it a nullity. As a general rule this would be true. Contracts to convey or encumber community realty are voidable if they lack the wife's signature. *See Tombari v. Grieppe,* 55 Wn.2d 771, 350 P.2d 452 (1960); *Stabbert v. Atlas Imp. Diesel Engine Co.,* 39 Wn.2d 789, 238 P.2d 1212 (1951); but it is also true that the foregoing general rule has its exception. As early as *Konnerup v. Frandsen,* 8 Wash. 551, 36 P. 493 (1894) the Washington Supreme Court recognized that a wife may be estopped from nullifying the sale of real property made by her husband. The wife's knowledge of the sale and acceptance of its fruits are sufficient facts to constitute an estoppel. *See Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967).

In the instant case Mrs. Schlichtig acquiesced in her husband's handling and management of their real estate. She said that what he did with it was all right with her. She had actual knowledge of the offer to sell to respondent, was agreeable to its terms, and left the arrangements in the hands of her husband and Holman. The facts are sufficient to evoke an estoppel. *See Sander v. Wells, supra.*

Finally, appellants contend that the trial court erred in dismissing their claim against Morse for acting on their behalf without authority, with resultant damage to them. Since we have ruled that he was their agent there is no merit to this contention. The evidence is to the contrary, as are the findings of fact entered by the trial court based thereon. Findings of fact supported by substantial evidence

will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Judgment is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied January 2, 1973.

Review denied by Supreme Court February 21, 1973.