[No. 45970. En Banc. June 12, 1980.]

CLARENCE POWERS, ET AL, *Respondents,* v. ROBERT G. HASTINGS, ET AL, *Petitioners.*

*Howard P. Pruzan* (of *Miracle, Pruzan & Nelson*), for petitioners.

*Angevine & Johnson,* by *Earl F. Angevine* and *Elliott W. Johnson,* for respondents.

WRIGHT, J.—Respondents Powers brought an action for the breach of an oral lease–option agreement. They obtained a jury verdict for $40,000 damages. Petitioners Hastings successfully moved for judgment notwithstanding

the verdict (n.o.v.) and the trial court dismissed the complaint with prejudice. Division One of the Court of Appeals reversed. The determinative question is whether there was substantial evidence before the jury of (1) the terms, character and existence of the contract, and (2) part performance.

Robert and Hazel Hastings owned a Skagit County farm they wanted to sell. After Dorothy and Clarence Powers were unable to secure financing, the Hastings orally agreed to lease them the farm for 3 years with an option to purchase. The Powers repaired and improved the property in order to make it operable as a dairy farm again. They also moved their dairy herd onto the farm and increased its size from 75 to 95 cows.

In fall 1974 the dairy business deteriorated when milk prices plummeted so the Powers had difficulty making the agreed payments. They stopped making payments in October and attempted to obtain financing to buy the property but the Hastings denied the option's existence and disputed the terms of sale. The Hastings also refused to give the Powers a written lease. Consequently, the Powers were unable to secure financing to exercise their option. Although the Hastings acquiesced in the nonpayment of rent throughout the fall, on about December 16, 1974, the Powers received an eviction notice. Shortly thereafter the Powers sold their cows at a substantial loss and left the farm, which was sold to a third party in March 1975. The Powers subsequently sued for damages.

In their pleadings and testimony, the Hastings admitted the existence of the lease–option, including the most important terms. Nevertheless, they argued that because the agreement was oral it is unenforceable under the statute of frauds.[1] At no point did the Hastings assert that the

---

[1]The parties' oral contract or agreement falls, at least initially, within the wording of two statutes of frauds. RCW 19.36.010 provides in part: "[A]ny agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the

Powers' failure to raise the lease–option agreement as a defense to the eviction barred the instant action.

The trial judge granted the Hastings' motion for judgment n.o.v. Though he acknowledged the lease–option agreement, the judge found it unenforceable under the statute of frauds. He further concluded there was not any part performance to take the agreement outside the statute because (1) the payment of rentals and the possession point unmistakably to the lease rather than the option, and (2) the improvements do not unequivocally or unmistakably point to the option.

On appeal, the Court of Appeals, Division One, held the statute of frauds does not bar option agreement enforcement because the testimony of both parties as to the existence of the lease–option and its particulars removes the feared uncertainty and potential for fraud underlying that statute. *Powers v. Hastings,* 20 Wn. App. 837, 846, 582 P.2d 897 (1978). As an alternative ground for reversal, the court concluded there was substantial evidence before the jury of part performance, including the Powers' possession, substantial improvements and payments "far in excess of a reasonable monthly rental value for the farm." 20 Wn. App. at 847. The court held at pages 847–48:

> [T]he monthly payments, the taking of possession, and the making of permanent and substantial improvements point unmistakably to the lease which, necessarily, includes the option to purchase the Hastings farm.

The Court of Appeals raised the issue of whether Robert Hastings' in–court testimony recognizing the existence and terms of the oral agreement is sufficient to make the statute inapplicable. Petitioners Hastings argue this "change" in application of the statute should not be made without briefing or arguments. We may review a decision, however,

---

party to be charged therewith, . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof . . ."

RCW 64.04.010 provides that

"Every conveyance of real estate, or any interest therein, . . . shall be by deed."

on the basis of issues not raised or argued by the parties on appeal although we usually decline to do so. *Haslund v. Seattle,* 86 Wn.2d 607, 616, 547 P.2d 1221 (1976); *Siegler v. Kuhlman,* 81 Wn.2d 448, 453, 502 P.2d 1181 (1972). It is not necessary to do so here because substantial evidence of the terms, character and existence of the agreement, and of part performance supports the jury's verdict and makes judgment notwithstanding that verdict erroneous.

■ A challenge to the sufficiency of the evidence, including a judgment n.o.v.,

> admits the truth of the opponent's evidence and all inferences which can reasonably be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in a light most favorable to the opponent. No element of discretion is involved. Such motions can be granted only when the court can say, as a matter of law, there is no substantial evidence to support the opponent's claim.

*Davis v. Early Constr. Co.,* 63 Wn.2d 252, 254–55, 386 P.2d 958 (1963); *Singer Credit Corp. v. Mercer Island Masonry, Inc.,* 13 Wn. App. 877, 881–82, 538 P.2d 544 (1975). "Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise." *Holland v. Boeing Co.,* 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978); *In re Snyder,* 85 Wn.2d 182, 185–86, 532 P.2d 278 (1975).

I

The Hastings challenge the Court of Appeals conclusion that the testimony of both parties as to the existence of the lease–option and its particulars removes the potential for fraud arising from uncertainty inherent in oral agreements which is the basis for the statute of frauds bar against contract enforcement. They argue the threshold part performance requirement was not met:

> [T]he contract [must] be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract. . . .

> A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance.

*Miller v. McCamish,* 78 Wn.2d 821, 829, 479 P.2d 919 (1971), quoting *Granquist v. McKean,* 29 Wn.2d 440, 445, 187 P.2d 623 (1947). The record, however, refutes the Hastings' contention. There is substantial evidence from which the jury could make its findings as to the terms, character and existence of the contract.

An affidavit signed by Robert Hastings and admitted into evidence: (1) acknowledges he entered an agreement with Clarence Powers providing that the farm would be leased for 3 years, beginning July 1, 1973, with an option to purchase exercisable any time before July 1, 1976; (2) specifies payment amounts ($1,000 per month for the first year and $1,500 per month for the next 2 years), the purchase price ($185,000) and the amount of the monthly installment payments (at least $1,300 "or something close to that"); (3) states the Powers assumed the property taxes and insurance premiums beginning July 1, 1973. Hastings repeatedly confirmed these terms while testifying, and further indicated the precise amount of the purchase installment payments would depend upon the size of the Land Bank payments.

The terms spelled out in the affidavit—including lease-option duration, payment amounts, purchase price and responsibility for insurance and taxes—were repeatedly stated in testimony by Hazel Hastings and Clarence and Dorothy Powers. In addition, Clarence Powers and Robert and Hazel Hastings testified that the interest rate on the deferred balance would fluctuate with the Land Bank rate.

As in *Miller v. McCamish, supra,* there is sufficient evidence to persuade a fair-minded person of the existence, terms and character of the contract. Insofar as the requirement of "clear and unequivocal" evidence relates to specificity of proof, there is ample evidence to support the jury's findings. The objective meaning of that standard of proof

relates to the quality of the evidence and the credibility of the witnesses. *Miller v. McCamish, supra* at 831. Questions of credibility are the province of the jury. *Gazija v. Nicholas Jerns Co.,* 12 Wn. App. 538, 541, 530 P.2d 682 (1975); *Arthurs v. National Postal Transp. Ass'n,* 49 Wn.2d 570, 577, 304 P.2d 685 (1956).

The credibility of Robert Hastings was placed in question by his inconsistent testimony and memory lapses. While Clarence Powers and Dave Clark, the farm repairman, repeatedly testified the farm down payment was $10,000, Hastings, in contrast, said it was $12,500 in the affidavit but variously placed it at $15,000 and $20,000 in his testimony. He also testified he sold the farm to the third party—Steve Benson—for $199,700 and $200,000, while in the deposition he said the price was $230,000. Benson indicated he bought the farm for $225,000. Hastings had difficulty, as well, remembering details of insurance payments made by Clarence Powers. In addition, he was unsure both about the amount of rent Benson paid after the Powers were gone and the months during which Benson occupied the farm house. He similarly lacked recall of various statements he made in his deposition concerning the sale to Benson. Finally, Hastings could not remember signing the affidavit under oath only 2 months before trial. In light of these incongruities and memory lapses, the jury was entitled to discount Robert Hastings' testimony.

The evidence leaves no doubt as to the relationship intended by the parties in their oral agreement. Like the parties in *Miller,* the parties here clearly contemplated an option in the Powers to purchase the Hastings farm.

Moreover, the "clear and unequivocal" evidence standard applied by the trial court in compliance with *Miller v. McCamish, supra,* traditionally has been applicable where specific performance is sought but not to actions for legal damages. In *Cahalan Inv. Co. v. Yakima Cent. Heating Co.,* 113 Wash. 70, 193 P. 210 (1920), the court found the evidence of the contract was not clear and convincing; however the justices concluded that the evidence

might suffice in an action at law for breach of contract. The court explained:

> [A] distinction exists in the degree of proof required to establish a contract when the action is one to recover in damages for a breach of the contract and when it is one to enforce a specific performance of the contract. In the one case the plaintiff may recover if he shows the existence of the contract by a preponderance of the evidence (provided, of course, his evidence makes a *prima facie* case), while in the other he must satisfy the court of the existence of the contract by clear and convincing evidence.

113 Wash. at 74.

In *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955)—an action for damages for breach of a contract—the court explained the rationale for the differing degrees of proof: "[E]ven though an agreement may be too indefinite in its terms to be specifically enforced, it may be certain enough to constitute a valid contract for breach of which damages may be recovered." 47 Wn.2d at 688, quoting *Gulbenkian v. Gulbenkian,* 147 F.2d 173, 175, 158 A.L.R. 990, 995 (2d Cir. 1945). A similar explanation was given by the California court in *Stanton v. Singleton,* 126 Cal. 657, 664, 59 P. 146, 148 (1899), where it quoted J. Pomeroy, *Specific Performance of Contracts* § 159, at 224 (2d ed. 1897):

> An action at law is founded upon the mere non–performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of non–performance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced.

Notwithstanding this distinction, in *Miller v. McCamish, supra,* the court applied the "clear and unequivocal" evidence standard to an action for legal damages based upon an oral lease–option agreement. The court reasoned that satisfaction of the "clear and unequivocal" test stated in

*Granquist v. McKean, supra,* removed the danger of fraud arising from uncertainty inherent in oral contracts which is the reason for the statute of frauds. The court, however, did not discuss whether application of that specific performance standard of proof is appropriate where legal damages are sought. Under the facts of the instant case, even if the evidence is not "clear and unequivocal", it sufficiently establishes the agreement to remove the danger of fraud arising from uncertainty, thereby excusing application of the statute. Because legal damages—rather than specific performance—are sought, less than "clear and unequivocal" evidence suffices.

## II

█ The elements involved in determining if there is sufficient part performance to "remove" an oral contract for the sale or lease of real property from the operation of the statute of frauds are: (1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract. *Richardson v. Taylor Land & Livestock Co.,* 25 Wn.2d 518, 528–29, 171 P.2d 703 (1946). Because all three elements appear to be present in the instant case, a fair–minded person would conclude there is sufficient evidence of part performance of the lease–option agreement.

First, the Powers unquestionably had actual, exclusive possession of the farm pursuant to the agreement. Furthermore, $1,000 per month was paid during the first year of the lease and the payments increased to $1,500 per month July 1, 1974. One $1,500 outlay and one $800 partial payment were made before monthly payments ceased. There is evidence these payments were consideration for the option:

ATTORNEY: You are not contesting the reasonable rental value of the farm was $1,500 a month during that time, were you?
CLARENCE POWERS: I would contest it if it was rent value.
ATTORNEY: But that was your agreement, to pay that amount?

CLARENCE POWERS: Not in rent. I wouldn't have given $1,500 a month for the place unless I had an option to buy it.

Although the Hastings contend the rental constituted a modest annual return of 6 1/2 percent, in the second year that return—based on $1,500 per month—would total $18,000, or nearly 10 percent of the agreed purchase price. That return was on a farm that needed substantial repairs and required a dairy herd. Moreover, the payments substantially exceeded the $750 payments the Hastings were making on the property to the Land Bank. The parties agreed the Powers would pay taxes and insurance and they actually made three insurance payments. The jury could have concluded rightly that these "rent" and insurance payments indicated an optionee's interest.

Finally, the Powers made substantial improvements, expending more than $5,000, excluding their own considerable labor, on improvements worth $14,520. Near the milking parlor, a 60–foot by 6–foot strip of concrete was poured and plumbing for a washing area was installed. Manure deposited throughout the milking parlor was removed, the parlor was thoroughly cleaned, and additional wiring, light fixtures, lights and milking fixtures were installed. In the milk house—where the milk tank is located—lights, plumbing and a pump were installed. The milk house was repainted and the doors between the milk house and the milking parlor were rehung.

Outside, gates were repaired and reinstalled and fences were replaced. Manure was removed from the 85–foot–long feeder trough, which was then completely rebuilt. Likewise, the holding bin was cleaned and rebuilt. Approximately 2,000 cubic yards of manure, along with other refuse, was moved farther away from the milking operation. The floor of the shed was elevated with gravel and fill to provide adequate drainage, and the shed evidently was expanded. Finally, the Powers moved their herd onto the farm and added 20 springing heifers.

One acquaintance of the Powers worked 3 months on the projects and other labor was necessary, as well. Although some of the improvements were required by the milk inspector, many were initiated by the Powers.

Robert Hastings twice admitted and Hazel Hastings otherwise indicated that had the buildings, milking parlor and shed been in as good shape when they entered into the lease–option as they were after the repairs, the owners initially would have asked $220,000 for the farm instead of the $185,000 they unquestionably agreed on with the Powers. Furthermore, the farm sold for $225,000. There clearly was sufficient evidence to show these improvements were permanent, substantial and valuable. *See Himpel v. Lindgren,* 159 Wash. 20, 291 P. 1085 (1930) (farm improvements— including building, fence and road repair, manure removal, planting and cow raising—held sufficient evidence of part performance).

The Hastings strongly contend the acts of part performance do not point unmistakably and unequivocally to the existence of the claimed agreement. They invoke a frequently articulated part performance requirement:

> [T]he acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship . . . or may be accounted for on some other hypothesis, they are not sufficient.

*Miller v. McCamish, supra* at 829, quoting *Granquist v. McKean, supra* at 445; *Thompson v. Hunstad,* 53 Wn.2d 87, 91, 330 P.2d 1007 (1958).

Petitioners rely primarily on three cases in support of this argument. The facts of the first case, *Thompson v. Hunstad, supra,* are inapposite. There plaintiff alleged he paid defendants $8,000 for the purchase of real property under terms of an oral agreement whereby a note and mortgage would be executed by defendants in favor of plaintiff. After citing the rule set out above, the court held, "The fact that funds were advanced is no more indicative that there was an agreement to give a note and mortgage

than it is that an unsecured loan, or even a gift, was intended." 53 Wn.2d at 91.

In their brief, petitioners state the payments here do not point to existence of an option agreement, but instead are attributable to the rental agreement. In so arguing, however, the Hastings fail to acknowledge the payments were made pursuant to a single lease–option agreement—one agreement, as found by the Court of Appeals. Moreover, the substantial rate of return during the second year of the agreement—when considered in light of the farm's condition and the Powers' obligation to furnish the dairy herd—supports the jury's apparent conclusion the Powers were paying for more than a bare lease.

In the second case relied upon, *Broadway Hosp. v. Decker,* 47 Wash. 586, 92 P. 445 (1907), this court mistakenly overlooked the lessee's tender of $12,000 for purchase, as well as valuable improvements, in rejecting an argument for option enforcement based upon part performance. In the case at bar, besides possession, both payments and improvements are involved, which must be taken into account under *Richardson v. Taylor Land & Livestock Co., supra.*

The last case heavily relied upon by the Hastings is *Louron Indus., Inc. v. Holman,* 7 Wn. App. 834, 502 P.2d 1216 (1972), where a written lease agreement gave plaintiff a right of first refusal for the leased property. Defendants–lessors made a sale offer which plaintiff–lessee orally accepted. But after plaintiff made substantial improvements, defendants refused to sell him the land so he sought specific performance. The Court of Appeals, Division Three, held possession *alone* would not be sufficient to remove the case from operation of the statute of frauds because it was secured under the lease rather than by the contract to purchase. Thus, "[t]hat possession *alone* would not point unequivocally to the existence of a seller–buyer relationship but would be equally consistent with the relationship of landlord and tenant." (Italics ours.) 7 Wn. App. at 839.

The court went on to find payment of $1,000 earnest money to defendants' agent—when the lease called for $65 per month rent—consistent with a sale and inconsistent with a lease. Finally, the court found plaintiff's substantial permanent improvements in excess of those allowed under the lease consistent with a sale rather than a lease.

The Hastings overemphasize the *Louron* court's position on the possession element of part performance. The court said only that possession *alone* was not sufficient part performance because it was gained under the lease rather than under the purchase contract. Here, as in *Louron,* the lessees do not rely solely on possession. Instead, like Mr. Louron, the Powers made payments which could be found to be consideration for the option. And since the improvements substantially surpassed those required by the milk inspector—even though they did not go beyond the lease as in *Louron*—the jury properly could conclude they indicate more than a lessee's interest.

The requirement the acts of part performance not be accounted for on some other hypothesis has been questioned. Shattuck, *Contracts in Washington, 1937–1957,* 34 Wash. L. Rev. 345, 363 (1959). As the Powers argue, requiring the acts of part performance pursuant to a promise to grant an option to be rendered to the exclusion of any other relationship would make "proof of a lease or option impossible where provisions for both are part of the same agreement and consideration is given pursuant to both promises or a number of promises."

Although the strongest case for part performance is presented where all three part performance elements—possession, payments and improvements—are present, this court repeatedly has found sufficient part performance where two elements exist. *Haggen v. Burns,* 48 Wn.2d 611, 614–15, 295 P.2d 725 (1956) (possession and payments); *Priestly Mining & Milling Co. v. Lenox Mining & Dev. Co.,* 41 Wn.2d 101, 105, 247 P.2d 688 (1952); *Himpel v. Lindgren, supra; Koschnitzky v. Hammond Lumber Co.,* 57 Wash. 320, 323, 106 P. 900 (1910); *O'Connor v. Enos,* 56

Wash. 448, 453, 105 P. 1039 (1909); *Mudgett v. Clay,* 5 Wash. 103, 105, 31 P. 424 (1892) (possession and improvements). At least two elements are present in the instant case, as well, including substantial and valuable improvements, which have been characterized as the "strongest and most unequivocal act" and the "highest evidence" of part performance. *Henrikson v. Henrikson,* 143 Wis. 314, 321, 127 N.W. 962, 965 (1910); 73 Am. Jur. 2d *Statute of Frauds* § 424, at 55 (1974). The determination of each case, however, depends upon the particular facts and circumstances. *Richardson v. Taylor Land & Livestock Co., supra* at 529.

Because there is sufficient evidence to persuade a fair-minded person of the existence, character and terms of the contract and of part performance, the purpose of the statute of frauds—prevention of fraud arising from uncertainty inherent in oral contracts—would not be served by its application in the instant case. For the reasons stated, the judgment of the Court of Appeals, which reversed the trial court's judgment, is affirmed. The cause is remanded and the trial court is instructed to enter judgment based upon the verdict, with interest, in favor of the Powers.

UTTER, C.J., ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and BRYAN, J. Pro Tem., concur.