[No. 29351-6-I. Division One. February 16, 1993.]

NORMAN BERG, ET AL, *Appellants,* v. ROBERT Y. TING, ET AL, *Respondents.*

*Payton Smith, Clifford A. Cantor, Stephen M. Rummage,* and *Davis Wright Tremaine,* for appellants.

*Bruce H. Hurst* and *Betts, Patterson & Mines P.S.; Richard W. Pierson* and *Peery, Hiscock, Pierson & Ryder, Inc. P.S.,* for respondents.

PEKELIS, J. — Norman and Marjorie Berg appeal from an order granting summary judgment in favor of Robert Y. and Kathy Ting and dismissing the Bergs' action to quiet title to an easement across the Tings' property. The Bergs contend that the trial court erred in concluding that (1) the descriptions of the servient estate did not satisfy the statute of frauds, (2) the inadequate descriptions were not subsequently cured, and (3) the Bergs were not entitled to equitable relief. We reverse and remand for further proceedings.

I

The Bergs filed this action to quiet title to an easement across the Tings' property. The Tings' property is located

directly northeast and adjacent to the Bergs' property. In 1983, the Tings' property (hereinafter referred to as the "Cahill property") was owned by John L. and Beverly J. Cahill. Situated directly northeast and adjacent to the Cahill property was a parcel of property owned by Dr. and Mrs. Kenneth Hanson (Hanson property), who had signed a contract that year to sell it to Mr. and Mrs. Stuart Young.

Later that year, the Cahills and Youngs together submitted an application to the City of Seattle (City) for a short plat that would enable them to subdivide the Cahill property and the Hanson property. They proposed subdividing the two properties into seven lots to be accessed by a 20-foot-wide private driveway. Of the seven proposed lots, five were to be located on the Hanson property and two were to be located on the Cahill property.

The Bergs publicly opposed the short plat application. They wrote letters of opposition to the City and to other neighborhood property owners and expressed their opposition at neighborhood meetings. However, in a 1984 meeting with the Cahills and the Youngs, the Bergs orally agreed to withdraw their opposition to the short plat application in exchange for a grant of an easement down the subdivision's private driveway and across the Cahills' property to their own property. On March 3, 1984, the parties executed a document memorializing their agreement along with a document granting the easement. The Bergs thereafter dropped their opposition to the application.

Shortly afterward, on April 25, 1984, the City gave conditional approval to a modified version of the short plat application. The conditionally approved plan still contemplated seven lots. However, the lots were reconfigured.

On June 8, 1984, the parties executed an updated agreement prepared by the Bergs' attorney, in which the Cahills and Youngs agreed to execute and deliver a grant of easement in favor of the Bergs in exchange for the Bergs' discontinuance of their opposition to the short plat application. The grant of easement was executed on the same day. Paragraph 5 of the grant of easement provided as follows:

5. *Grant of Easement.* For value received, the receipt of which is hereby acknowledged by Grantors, Grantors hereby grant, convey and warrant to Grantees and their licensees, invitees, heirs, successors and assigns a perpetual nonexclusive easement *in, under and over the following tracts*:

TRACT A: The area designated as the private driveway across Lots A, B, C and F, *the exact location of which shall be determined by reference to the conditionally granted Application when the same is finally approved and recorded*; and

TRACT B: *That portion of Lots F and G of the Short Subdivision applied for under the Application as the same is finally approved and recorded* situated between the private driveway referred to in *TRACT A* above and the shore of Lake Washington, the upland boundary of which portion shall be a line commencing at the northwest corner of Lot G and running southerly to the point of intersection with the southerly boundary of the private driveway referred to in *TRACT A* above, thence westerly 50 feet along the southerly boundary of said private driveway, thence southerly, in a line parallel to the westerly boundary of Lot G, to the southerly boundary of Lot F;

to provide ingress and egress and for utilities to and for the benefit of the Berg Property, . . ..

(Italics ours.) The grant also provided that:

A. With respect to *Tract B*, Grantees shall have the right, . . . to locate and construct a 20-foot road across *Tract B* between any point on the private driveway referred to in *Tract A* and Grantees' property line. . . .

Moreover, the grant provided that, in the event of litigation, the prevailing party would be entitled to costs and attorney fees. The grant of easement was recorded on June 18, 1984.[1]

On May 2, 1988, the City granted final approval of the short plat application. The finally approved application was somewhat different from the conditionally approved application. Specifically, the approved application eliminated one of the seven lots, changed the lot designations, and shortened the private driveway referred to in tract A by 30 feet while

---

[1] The Youngs did not close on their contract to purchase the Hanson property, and their interest in the property expired. Consequently, the Bergs' easement encumbered only the Cahill property.

extending lot F approximately 30 feet in a westerly direction. The finally approved application was recorded on May 6, 1988.

Later that year, on October 6, 1988, the Cahills sold their property to the Tings. The deed to the property did not refer to the Bergs' easement. Shortly after the Tings closed the transaction, Norman Berg mentioned the easement to Robert Ting. However, the Tings subsequently refused to acknowledge the easement.

In March of 1990, the Bergs brought this action to quiet title to the easement across the Tings' property. The Bergs and the Tings then cross-motioned for summary judgment. The Bergs argued that the grant of easement was valid as a matter of law because the parties intended to create an easement. In a supporting affidavit, Norman Berg stated his belief that the easement "would go down the private roadway of the subdivision and over the back of the Cahill property to the edge of our property." He also stated that "I intended that if the subdivision configuration were to change prior to final approval, the easement description would change in a corresponding manner so as to go down the subdivision roadway as finally approved (tract A) and still go across the same back portion of the original Cahill property (tract B)." He stated further that:

> In the negotiations leading up to the granting of the easement, I discussed with the Cahills and agreed with them that the upland border of Tract B of the easement was to be fixed to coincide with (i) the top of the steep slope on the Cahill property and (ii) the top of the narrow concrete road that zig-zags down the steep slope on the Cahill property, so that my wife and I would have the right to tie into that existing concrete road at any point along its length.

Attached to Berg's affidavit was a map on which he highlighted what he said was the intended location of tracts A and B.

The Bergs also submitted several other affidavits in support of their motion.[2] The affidavit of Steven A. Hitchings, a

---

[2]Most of the affidavits submitted by the Bergs related to the parties' beliefs or purported intentions as to the location of tracts A and B and of the actual ease-

licensed land surveyor, stated that the location of tracts A and B as described in the grant of easement was clear to him. According to Hitchings, any "ambiguities exist only if an interpretation other than the most obvious and reasonable one is given to the words used in the description of the tracts."

In their cross motion for summary judgment, the Tings argued that the grant of easement was invalid because it did not provide adequate legal descriptions of the servient estate in violation of the statute of frauds. The Tings specifically pointed to the language in the grant of easement stating that the location of tracts A and B are to be determined by reference to the finally approved short plat application. In support of their motion, the Tings referred to Norman Berg's affidavit which, according to the Tings, evidenced his intention not to provide for the tracts' location in the grant of easement.

On August 16, 1991, the trial court granted the Tings' summary judgment motion and denied the Bergs' motion. In its oral opinion, the trial court concluded that the grant of easement was invalid as a matter of law because it did "not sufficiently describe the servient [estate] or refer to an existing instrument which [did] contain a sufficient description[] of the servient estate, but instead refer[red] to a future document with uncertain terms and uncertain legal description." In response to the Bergs' claim that the statute of frauds should not be applied in a manner that promotes fraud, the trial court stated that it found "no evidence of fraud" on the part of the Tings, "particularly in view of the

---

ment. The Tings moved to strike these affidavits on the grounds that they constituted inadmissible hearsay and extrinsic evidence. This motion was not ruled upon by the trial court.

In addition to the affidavits, the Bergs submitted the requests for admission that they had served upon the Cahills, who are third party defendants in this action, and to which the Cahills did not respond. The Bergs contend that due to the Cahills' failure to respond, the facts contained therein are deemed admitted pursuant to CR 36. However, as the Tings correctly respond, unanswered requests for admission, deemed admitted under CR 36, do not bind a coparty. *See* CR 36(b); 8 C. Wright & A. Miller, *Federal Practice* § 2265, at 747 (1970).

fact that the [Bergs'] . . . attorneys drafted the grant of easement." The Bergs subsequently filed a motion for reconsideration, arguing, *inter alia*, that the statute of frauds was satisfied because the location of tracts A and B was finally determined before this dispute arose and that they were entitled to equitable relief under the part performance doctrine. In support of their motion, the Bergs submitted the Cahills' deposition testimony. In his testimony, John Cahill stated that his intention in executing the grant of easement "was to access the Berg property at a point along the private driveway."

The trial court denied the Bergs' motion for reconsideration and entered an order awarding the Tings their costs and attorney fees. This timely appeal follows.

## II

The Bergs assert that the trial court erred in entering summary judgment in favor of the Tings. Their first contention is that the descriptions of tracts A and B, the servient estate, in the grant of easement were sufficient to satisfy the statute of frauds.

An easement is an interest in land subject to the provisions of RCW 64.04.010, which requires that conveyances be accomplished by deed. *Ormiston v. Boast*, 68 Wn.2d 548, 550, 413 P.2d 969 (1966); *Kirk v. Tomulty*, 66 Wn. App. 231, 236, 831 P.2d 792, *review denied*, 120 Wn.2d 1009 (1992). To be valid, a deed must be in writing, signed by the party bound thereby, and acknowledged. RCW 64.04.020. In addition, our Supreme Court has held that "to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960); *cf. Seattle v. Nazarenus*, 60 Wn.2d 657, 661, 374 P.2d 1014 (1962) (easement agreement's description of encumbered land did not violate statute of frauds because parol evidence was not necessary

to establish its boundaries). An agreement containing an inadequate legal description of the subject land is void and is not subject to reformation or specific performance. *Howell v. Inland Empire Paper Co.*, 28 Wn. App. 494, 495-96, 624 P.2d 739 (citing *Fosburgh v. Sando*, 24 Wn.2d 586, 589, 166 P.2d 850 (1946) and *Herrmann v. Hodin*, 58 Wn.2d 441, 443, 364 P.2d 21 (1961) (respectively), *review denied*, 95 Wn.2d 1021 (1981).

Despite these well-established principles, the Bergs argue that before determining whether the grant's descriptions of tracts A and B satisfied the statute of frauds, the trial court should have determined by extrinsic evidence the parties' intentions regarding the location of these two tracts. However, *Snyder v. Peterson*, 62 Wn. App. 522, 814 P.2d 1204 (1991), which the Bergs cite, does not support their argument. In *Snyder*, this court held that a deed containing an inadequate legal description of the property to be conveyed may be reformed to reflect the parties' intentions where the deficiency is due to a scrivener's error or a mutual mistake. 62 Wn. App. at 526-28. Unlike the description in *Snyder*, the deficient description here is not the result of a scrivener's error or a mutual mistake. Nor can *Snyder* reasonably be read as requiring the trial court, as a general matter, to look beyond a written conveyance to extrinsic evidence in order to determine the parties' intentions.

The Bergs next argue that tracts A and B were adequately described because they "made clear that the easement would run somewhere over the Cahill property once the subdivision process defined the easement's precise location." Specifically, the Bergs contend that the descriptions of tracts A and B were sufficient to create a "floating" easement, *i.e.*, the express right to locate an easement on some portion of the servient estate. The Bergs point out, correctly, that the statute of frauds does not require a deed to describe the precise location of an easement. *See, e.g.*, *Smith v. King*, 27 Wn. App. 869, 871, 620 P.2d 542, 24 A.L.R.4th 1049 (1980). However, the location of an *easement*, which need not be precisely described, is to be distinguished from the location of the *ser-*

*vient estate*, which must be accurately described. *See Pick v. Bartel*, 659 S.W.2d 636, 637-38 (Tex. 1983); *see also* R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* § 11.2, at 723 (1984) (to be valid, deed must describe or otherwise identify the land affected). Thus, even a deed conveying a "floating" easement must contain a precise description of the servient estate.[3]

Here, the locations of tracts A and B were not precisely described. Rather, the grant expressly limited the encumbered portion of the Cahill property to tracts A and B whose descriptions were uncertain. The tracts were described by reference to the lots designated on the original and conditional applications as/when those applications were finally approved. As the Bergs themselves point out, the descriptions could reasonably be read either as fixing the tracts geographically, irrespective of any subsequent changes in the lot designations, or as providing the method for locating the tracts in the future, *i.e.*, upon the final approval and recordation of the short plat application. The Bergs argue, in the alternative, that any deficiencies in the descriptions of tracts A and B were cured by the finally approved and recorded short plat application which fixed the location of the tracts prior to this dispute. According to the Bergs, a future writing which is incorporated in the conveyance instrument for the purpose of providing the agreed upon legal description of the subject property satisfies the statute of frauds where, as here, the writing is complete, *i.e.*, finally approved and recorded, before any dispute arises.

It is the general rule that if a deed furnishes the *means* by which the subject property can be identified with reasonable certainty, it need not itself describe the property with particularity. *See* 72 Am. Jur. 2d *Statute of Frauds* § 323 (1974).

---

[3]The Bergs misconstrue *Netherlands Am. Mortgage Bank v. Eastern Ry. & Lumber Co.*, 142 Wash. 204, 252 P.2d 916 (1927). *Netherlands* did not affirm the validity of an easement despite an inadequate description of the servient estate. Rather, in affirming the validity of a "floating" right of way, our Supreme Court found that the servient estate, section 23, was accurately described. *Netherlands*, 142 Wash. at 211.

Hence, in *Edwards v. Meader*, 34 Wn.2d 921, 923, 210 P.2d 1019 (1949), our Supreme Court held that an earnest money agreement that described the property to be conveyed as " '1136 Vandalia Legal Des. to be entered by agent" was sufficient to satisfy the statute of frauds where the real estate agent subsequently inserted the legal description as authorized.

Conversely, in *Ecolite Mfg. Co. v. R.A. Hanson Co.*, 43 Wn. App. 267, 269, 716 P.2d 937 (1986), the two earnest money agreements at issue contained the "approximate" dimensions of the parcels to be conveyed and had attached to them "approximate" sketches of the parcels. The agreements authorized an agent to insert the correct legal description of the parcels. *Ecolite*, 43 Wn. App. at 269. Division Three of this court held that the descriptions that were subsequently inserted based on a survey taken from the sketches did not cure the inadequate descriptions in the earnest money agreements for two reasons: First, the survey was based on the "approximate" sketches and therefore could only "approximately" locate the boundaries and, second, the survey was not approved by the parties. *Ecolite*, 43 Wn. App. at 271-72.

The facts of this case are more analogous to those in *Ecolite* than those in *Edwards*. Here, the grant's descriptions of tracts A and B were too ambiguous to be cured by the finally approved and recorded short plat application. This is because, as previously discussed, the descriptions in the grant of easement could reasonably be read either as fixing the tracts geographically or as providing the method for locating the tracts in the future. The approved application simply could not make precise this fundamental uncertainty.

Thus, the Bergs' arguments fail. Because the grant of easement as drafted did not adequately describe the servient estate and because this inadequacy could not be cured by the finally approved and recorded short plat application, the grant of easement did not satisfy the statute of frauds.

### III

The Bergs next contend that, even if the statute of frauds was not satisfied here, the grant of easement nevertheless is

enforceable under the part performance doctrine. In Washington, an instrument conveying an interest in land which does not satisfy the statute of frauds may be specifically enforced if there has been sufficient part performance by the nonrepudiating party. *See Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 527, 171 P.2d 703 (1946).

Generally, the elements involved in determining whether there is sufficient part performance to remove a conveyance from the operation of the statute of frauds are: (1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract. *Powers v. Hastings*, 93 Wn.2d 709, 717, 612 P.2d 371 (1980).[4] While all three elements of the test need not be present, Washington courts have found sufficient part performance where at least two elements exist. *See Powers*, 93 Wn.2d at 721; *Williams v. Fulton*, 30 Wn. App. 173, 178, 632 P.2d 920, *review denied*, 96 Wn.2d 1017 (1981).

■ However, it is clear that the part performance test is not to be applied mechanically. In fact, in deciding whether there had been sufficient part performance, our Supreme Court has stated that

> no positive rule has been, or can be, formulated for the government or decision of all cases indiscriminately, but . . . the determination of each case must depend upon the particular facts and circumstances involved therein.

*Richardson*, 25 Wn.2d at 529; *accord, Powers*, 93 Wn.2d at 722.

The Restatement (Second) of Contracts is consistent with the Washington approach for determining whether there has been sufficient part performance. Section 129 states:

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforce-

---

[4] We note that the *Powers* test is more useful in cases involving purchase and sale agreements than in cases involving easements. In fact, most of the cases in Washington applying these factors involve purchase and sale agreements. *See, e.g., Williams v. Fulton*, 30 Wn. App. 173, 632 P.2d 920, *review denied*, 96 Wn.2d 1017 (1981); *Dunbabin v. Allen Realty Co.*, 26 Wn. App. 660, 613 P.2d 570 (1980).

ment, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Restatement (Second) of Contracts § 129 (1981). The Restatement rule is elaborated upon in comment *d* which is particularly apt here:

> [T]he making of the promise [must be] admitted or . . . clearly proved[,] [t]he promisee must act in reasonable reliance on the promise, before the promisor had repudiated it, and the action must be such that the remedy of restitution is inadequate. If these requirements are met, neither taking of possession nor payment of money nor the making of improvements is essential. Thus, the rendering of peculiar services not readily compensable in money may justify specific performance, particularly if the promisee has also taken other action in reliance on the promise.

Restatement (Second) of Contracts § 129, comment *d*.

Recently, this court considered the part performance exception to the statute of frauds in a case involving an easement. *See Kirk v. Tomulty*, 66 Wn. App. 231, 831 P.2d 792, *review denied*, 120 Wn.2d 1009 (1992). In *Kirk*, while not explicitly mentioning section 129 of the Restatement, we stated that:

> A conveyance can be taken out of the statute of frauds where there has been part performance of a contract on one side and an acceptance of benefit by the other. . . . Equity should intervene to deny one party what would clearly be an unjust enrichment as long as the character, terms and existence of the contract can be clearly and unequivocally established to the satisfaction of the court. . . . *The crucial inquiry is whether creation of an easement was in fact intended.*

(Citations omitted. Italics ours.) 66 Wn. App. at 237.

Under these authorities, we conclude that the Bergs' part performance was sufficient to take the conveyance of the easement out of the statute of frauds. Here, it is undisputed that the Cahills and the Bergs intended to create an easement in favor of the Bergs in exchange for the Bergs' withdrawal of their opposition to the short plat application. In addition, the essential terms of the parties' agreement have been clearly and unequivocally established.[5] It is undisputed

---

[5] Any ambiguities as to the *precise* location of the easement may be resolved by ascertaining the parties' intent through the examination of such factors as the

that the parties' intentions were to provide the Bergs with an easement across the Cahill property from a point along the subdivision's private driveway. Further, it is undisputed that the Bergs performed their part of the agreement. By withdrawing their opposition to the short plat application, the Bergs helped the Cahills obtain final approval of the application, thus causing the Cahill property to increase substantially in value. Finally, the Bergs cannot be adequately compensated in damages nor restored to their original position. Given the Bergs' situation, "the contract, though otherwise void, may be enforced in equity." *Garbrick v. Franz*, 13 Wn.2d 427, 431, 125 P.2d 295 (1942); *accord*, Restatement (Second) of Contracts § 129, comments *b, d*.

Finally, we address the Tings' contention that the part performance doctrine is unavailable to the Bergs based on the proposition stated in *Richardson* that " '[i]n every case where the doctrine of part performance has been applied, the elements of a constructive fraud will be found to exist, and in the absence of these elements equity always refuses to interfere." 25 Wn.2d at 528 (quoting J. Pomeroy, *Specific Performance of Contracts* § 106 (3d ed. 1926)). Because the trial court expressly found that there was no evidence of fraud here, for the reason that the Bergs' attorney drafted the grant of easement, the Tings conclude that equitable relief is inappropriate.

▉ We believe the Tings have misunderstood the use of the term "fraud" here. In the context of part performance, "fraud" does not mean fraud in the *execution* of the conveyance instrument. Section 129 of the Restatement, which the Tings themselves rely upon, states that "repudiation after 'part performance' amounts to a 'virtual fraud" which justifies specific enforcement of the agreement. Restatement (Second) of Contracts § 129, comment *a*. Thus, it is apparent that, in the context of deciding whether to order specific enforcement of a partially performed agreement, "fraud" occurs when one side repudiates the agreement after the other side has per-

---

interpretation of the pertinent language, the circumstances surrounding the transaction, the situation of the parties, the subject matter, and the subsequent acts of the parties involved. *See Kirk*, 66 Wn. App. at 238.

formed. *See Richardson*, 25 Wn.2d at 527. This was the case here. Hence, fraud is present here and specific enforcement of the agreement is not barred.

We therefore reverse the order of summary judgment and remand this case to the trial court. Given the undisputed proof of the parties' intention to create an easement in favor of the Bergs across the Cahills' property from a point along the subdivision's private driveway, the trial court should be able to determine a mechanism for selecting the easement's precise location. We also reverse the trial court's award of costs and attorney fees in favor of the Tings and direct the trial court to order an award of costs and fees in favor of the Bergs. In addition, the Bergs are entitled to their costs and fees on appeal.

WEBSTER, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied May 11, 1993.

Review granted at 123 Wn.2d 1013 (1994).